## JOHN B. REYNOLDS v. JOHN J. MYERS.*

*Evidence. Proof of Incorporation. Contract. Consideration.*

In assumpsit on an agreement in writing signed by A, B, and defendant, whereby the signers agreed that plaintiff should within sixty days, receive either $6,000 or two hundred and forty shares of the stock of the S. F. Marble Co., at their option, it was alleged and appeared that plaintiff had a contract with said company whereby he had control of the sales of all marble quarried and manufactured by said company, and a percentage thereon; that A, B, and defendant, as stockholders in said company, undertook to purchase plaintiff's interest in that contract, and, to induce him to give up his claims thereunder, made the agreement declared on; that plaintiff, relying thereon, gave up said contract, and that A and B paid their parts of the agreed sum, but that defendant did not. To show the existence of the alleged corporation, plaintiff offered in evidence what purported to be the book of records of a company of that name, and was permitted to prove by one of the directors of that company, that the book was the record-book of the company, and that the records were in the handwriting of the company's clerk, and were authenticated by him. *Held*, that as the question as to the corporate existence of the company was collateral only, plaintiff, to prove such existence, had only to prove that the company assumed to act as a corporation, and that of that, the duly identified book of records, showing organization and acts thereunder, was competent evidence.

At the time the alleged contract for the sale of marble was made, the S. F. Marble Co. was a corporation under the laws of Massachusetts. A new company, having the same name, the same place of business, and substantially the same officers and stockholders, was subsequently incorporated under the laws of Vermont; and the new company purchased the property of the old company, and assumed its liabilities. The two companies were virtually the same, the only material difference being in the source whence they derived their corporate existence. After the incorporation of the new company, A, B, and defendant entered into the contract declared on. The contract relative to the sales of marble, was for no definite time, but was to continue as long as the sales showed a satisfactory increase; but neither party had attempted to terminate it, and its-nature, object, and terms were known to A, B, and defendant. *Held*, that that contract was a subsisting obligation, and passed to the new company with other liabilities, and that the contract in issue was upon sufficient consideration.

ASSUMPSIT. The declaration contained the common counts, and also a special count alleging that on November 21, 1870, the Sutherland Falls Marble Company, a corporation existing under the laws of Vermont, was doing business at Sutherland Falls, in Rutland ; that John B. Page, Redfield Proctor, and defendant

*Decided at the January Term, 1878.

were stockholders in said company, and owned a controlling interest therein ; that the plaintiff was also a stockholder therein ; that said company had prior to that date been chartered, organized and doing business under the laws of Massachusetts, and Page, Proctor, and defendant, stockholders therein ; that in the transfer of said corporation from the organization under the laws of Massachusetts to the company so organized under the laws of Vermont, all the assets of said old corporation, as well as all its liabilities and contracts, were transferred ; that on that date the plaintiff had a contract with the old company that was so transferred, whereby, among other things, he had control of, and a percentage on, the sales of all marble quarried and manufactured by said company, which contract was to the plaintiff of the value of $10,000 ; that on that ·day said Page, Proctor, and defendant, as such stockholders, undertook to purchase the interest of the plaintiff in said contract, and, to induce him to give up his claims thereunder, then and there agreed with him, that he should receive within sixty days either $6.000, or two hundred and forty shares of the stock of said company, at their option ; that thereupon the plaintiff, relying on said contract, gave up his said contract ; that Page and Proctor had paid their respective third parts of said sum, but that defendant had not, &c.   Plea, general issue, and trial by jury, September Term, 1876, WHEELER, J., presiding.

The plaintiff introduced in evidence a memorandum bearing date November 21, 1870, and signed by Page, Proctor, and the defendant, whereby it was stated to be understood that the plaintiff should receive within sixty days either $6,000, or two hundred and forty shares of the stock of said company, at the signers' option.   The memorandum bore indorsements signed by the plaintiff acknowledging payment by Page and Proctor of their shares of the sum therein named.

The plaintiff also, to show the existence of said company in Massachusetts, offered in evidence what purported to be the book of records of a corporation under the laws of Massachusetts called the Sutherland Falls Marble Co., and proved by one of the directors of the company that the book was the company's record book

that the records were in the handwriting of John D. Bryant, who was the clerk of the company during the whole time of its existence, and were authenticated by him. The defendant objected to the admission of the book, for that it was not sufficiently proved, but it was admitted ; to which the defendant excepted. Plaintiff then read in evidence that part of the records showing the organization of the company in Massachusetts, to which defendant objected. The defendant also objected that no law of Massachusetts had been proved sustaining the action purporting to be set forth in such record, but the objection was overruled, to which the defendant excepted.

The plaintiff also read other parts of the records that tended to show that at some time prior to February 12, 1870, the plaintiff made a proposition to the company for selling its marble on commission, which, at a meeting of that date, was referred to a committee ; that on the 26th of the same month the committee was by vote of the company empowered to make such arrangement with the plaintiff relative thereto as they might deem for the company's interest ; that at a meeting of the stockholders of said company on November 19, 1870, said Page stated that a company of the same name, of which he was president, had been formed under a charter from the Legislature of Vermont, and that he was authorized by said company to offer to purchase from the Massachusetts company all its property, real and personal, and to assume its liabilities ; that it was thereupon voted that the offer be accepted at the sum of $150,000, and that the treasurer of the company be authorized to execute the necessary conveyances.

The organization and existence of the Sutherland Falls Marble Company of Vermont was conceded.

The plaintiff, being called in his own behalf, testified that he had a contract with the Massachusetts company, in which all parties to the memorandum in question were leading stockholders, entered into about two months before the sale to the Vermont company, for selling its marble on commission which was worth to him, as he thought, $5,000 to $7,000 a year ; that he did business under that contract until said sale was made, after which he gave up the contract and took in lieu thereof the memorandum in ques-

tion and an agreement for a salary of $2,500 per year, the consideration of the memorandum being the surrender of that contract; and that the commissions he had theretofore earned under the old company were paid to him by said Proctor, who was treasurer of the new company. On cross-examination he was asked if there was any definite time fixed for the continuance of that contract, and answered that there was not—that it was " subject to termination by either party at option," that Proctor, as agent of the new company, did not assume performance of that contract a day after the organization of the new company, but that he himself " conceived the idea that in point of honor the Vermont company was bound to carry it out." He also testified that while that contract was in force there were several important sales of marble, and that the regular sales were to the amount of $5,000 to $15,000 for a month or six weeks. On redirect examination he testified that the understanding was, that the contract should continue as long as the sales showed a satisfactory increase—as long as he seemed to be doing the business well.

Said Page was then called as a witness on the part of the plaintiff, and testified that the old company did business under articles of association filed in Massachusetts under a general law; that he was a director in that company; that there was some arrangement with the plaintiff for the sale of marble, but that his recollection of it was not very distinct; that he did not recollect its terms at all, but thought it was on the basis of a percentage on sales ; that he supposed the plaintiff acted under the arrangement ; that it was thought desirable that the plaintiff should work on a salary, and that that contract and certain other matters were equitably adjusted by the memorandum in question, the surrender of the contract being a part, but only a part, of the consideration thereof; and that the new company assumed all the liabilities of the old one.

The records of the Vermont company were also put in evidence, and showed the subscriptions for stock therein by all parties to the memorandum, the purchase from the Massachusetts company, and the appointment of the plaintiff as its sales agent.

The defendant requested the court to charge that the memoran-

dum was without consideration, because the contract said to have been surrendered was revocable by either party, because the plaintiff could not have enforced its continuance, because it was a personal contract between the plaintiff and the old company, and not binding on the new company,—the purchase of the property of the old company, subject to existing debts and liabilities, not requiring the purchaser to assume a contract with a "sales agent" of the old company at a rate of compensation based on a percentage of its collections ; that the alleged consideration moved to the company and not to the individuals who signed the memorandum; that the vote of February 26, 1870, did not authorize the committee to make such a contract, as the plaintiff testifies was made ; that it was the duty of the plaintiff, on Myers's failure to elect between payment of money and delivery of stock, to make such election himself, and to the knowledge of Myers, before bringing action ; that the plaintiff is not entitled to recover, because the evidence introduced did not prove the consideration alleged in the special count, and that the plaintiff was not entitled to recover on the common counts ; that the proof concerning the organization and existence of the Massachusetts corporation was not sufficient to sustain the allegations of the declaration.

The court declined so to charge, but charged that the memorandum was the obligation of the men who signed it; that if it was valid, as they did not deliver the shares of stock, the plaintiff had a right to $6,000 in money ; that the only question was whether it was valid against Myers for the unpaid third of that sum ; that the agreement was not binding unless it was made on sufficient consideration ; that it need not be dollar for dollar, but that it must be some real thing; that the question was whether any such thing had been shown ; that it must be the consideration that was alleged ; that the evidence was sufficient, if believed, to show that there was such a corporation as was alleged then existing under the laws of Massachusetts ; that to make a sufficient consideration, there must have been something done by the plaintiff that either benefited the defendant or was a detriment to himself; that if the contract was revocable at the option of either party, then when the Massachusetts company stopped

its business and transferred it to the Vermont company, that put an end to the contract, and the plaintiff lost nothing by giving it up; that the jury should not take the plaintiff's testimony all one way or all the other way, but take it all together and say from the whole of it what the contract was; that if the arrangement was that the agents of the Massachusetts company would employ him at the agreed rates as long as the business was successful, and he had agreed to serve them as long as it was successful, and he had served them to that time successfully, and the company was about to transfer the business to the Vermont company with all its obligations, and there was an existing obligation to employ him at those rates, and he claimed it to be in force, and binding on the Vermont company, and Myers was so interested in both companies that he was willing to give the obligation in order to have the contract given up, then there was a sufficient consideration, and there should be a verdict for the plaintiff.

To the refusal to charge as requested, and to the charge given, the defendant excepted.

The jury found for the plaintiff for $2,680, and cost.

The defendant thereupon moved in arrest for insufficiency of the special count, on which the verdict was taken, but the motion was denied, *pro forma*, to which the defendant excepted.

The defendant also moved that the verdict be set aside as against the evidence, but the motion was denied, to which the defendant excepted.

*Prout, Simons & Walker*, for the defendant.

The company with which the contract was made was a foreign corporation organized under a general law. The evidence by which the existence of that corporation was sought to be shown, was insufficient to show a corporation *de facto*, if the existence of a foreign corporation can be proved in the manner implied by that phrase, because the plaintiff did not connect his proof with evidence of a law or charter authorizing the organization. Acts of user of corporate powers must be connected with one or the other, and it must be produced and proved. *Fire Department* v. *Kip*, 10 Wend. 266 ; *Bank of Auburn* v. *Aiken*, 18 Johns. 137 ;

57

*U. S. Bank* v. *Stearns*, 15 Wend. 314; *Barrett* v. *Mead*, 10 Allen, 337; *Leonardsville Bank* v. *Willard*, 25 N. Y. 574. This is manifest from another consideration: Whether a corporation or not, is a mixed question of law and fact. The law authorizing the organization, the mode of organization, and user are all involved, and as to whether valid or not, we were entitled to the judgment of the court instead of the conclusions of the witness. But a question of a broader scope is involved. Had the plaintiff a contract with a *corporation*, the Sutherland Falls Marble Company, of Massachusetts, as alleged? The contract must be proved to have been made with the party alleged. That involves the proving of the law under which the corporation was created. *Mokelumne Mining Co.* v. *Woodbury*, 14 Cal. 424. It is otherwise with respect to a corporation formed under a special charter, and the objection may be taken collaterally and under the general issue. Angell & Ames Corp. 644; *M. E. Church* v. *Pickett*, 19 N. Y. 485; *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282; *Bank of Toledo* v. *International Bank*, 21 N. Y. 542.

Again, a corporation cannot be formed without certificate or articles of association, and they should be proved. *Oakes* v. *Hill*, 14 Pick. 448; Angell & Ames Corp. 646, 647; *Stevens* v. *Eden Meeting-House Society*, 12 Vt. 688.

The memorandum cannot be enforced. It is without consideration, as the plaintiff had no continuing contract with the Massachusetts company. The question then arises, was the contract terminated? If the right or privilege of terminating it existed, it could be exercised by notice, suspension of business, sale, or by a renunciation of the contract by the parties. It was terminated by the sale to the Vermont company. Besides, the contract to sell on commission was, in effect, a contract appointing the plaintiff as the company's agent. The dissolution of a partnership determines the authority of an agent.

The plaintiff alleges, that he had a contract with the old company, that was *transferred* to the new company. But there was no evidence of a transfer of that contract. The absence of proof to sustain the allegations of the declaration is not mere variance, but matter of substance.

The motion in arrest should have prevailed. The allegation is, that the Sutherland Falls Marble Company, a corporation existing under the laws of Vermont, was doing business at, &c., that said company had, prior to that date, been chartered, organized, and doing business under the laws of Massachusetts. That was alleging a legal impossibility. Those companies were not identical. They were as distinct as two natural persons. It is alleged that Page, Proctor, and the defendant, undertook to *purchase* plaintiff's interest in the contract, and that the plaintiff *gave up* said contract. A purchase implies an assignment. Giving it up, implies a discharge. Besides, the contract is not sufficiently set forth. The court cannot determine from the declaration whether it was valid or not, or whether it was subsisting or not.

*Wm. H. Smith*, for the plaintiff.

The motion in arrest should not prevail. The special count is sufficient, especially after verdict. That count and the issue thereon necessarily put the plaintiff to proof of all the facts requisite for him to sustain his claim against the defendant. That is the rule for testing sufficiency of the declaration after verdict. 1 Chit. Pl. 712. If any necessary fact is not specifically alleged, and the general allegations in the count require proof of such facts, to entitle the plaintiff to a verdict, it will be intended that such facts were duly proved. *Gates* v. *Bowker*, 18 Vt. 23 ; 1 Chit. Pl. 719. The plaintiff may recover on the common counts. If the special count is bad, and common counts sufficient, plaintiff may hold his verdict. *Camp* v. *Barker*, 21 Vt. 469.

The parties are shown to have been stockholders in the Massachusetts company, and to have acted their parts in such company. The defendant is thus precluded from questioning the corporate existence of that company, and its capacity to do business. *Bank of Manchester* v. *Allen*, 11 Vt. 302, 306, per WILLIAMS J.; *Phœnix Warehouse Co.* v. *Badger*, New York Court of Appeals, Am. Law Jour. December, 1876. The corporate existence of the Massachusetts company is not necessarily involved. That question only arises incidentally, and is not put in issue by the plea. But if otherwise, the records of the company are admissible in suits

between members of the company, are evidence of the acts of the company, and are *prima facie* evidence of its legal existence and its capacity to act. 1 Stark. Ev. 297, 298 and note (1); *Owings* v. *Speed*, 5 Wheat. 520; 2 Phil. Ev. 295 *et seq.*, and notes; *Sawyer* v. *Baldwin*, 11 Pick. 492. The identity of the records of a corporation may be shown by any person knowing the fact.

The motion to set aside the verdict should not prevail. The contract was continuing, and there was no error in the charge, nor in the refusal to charge as requested, of which the defendant can complain.

*E. J. Phelps*, for the plaintiff.

This was not the case of the mere sale of property by one independent organization to another. It was a method adopted to place the business under a Vermont instead of a Massachusetts organization. The stockholders were the same in both companies. The new one was organized to take the place of the old. The whole concern—property, business, obligations, and liabilities— was turned over from one to the other, and the new one stood, and was designed to stand, precisely in the shoes of the old. Clearly the plaintiff's contract went with the rest, and could not be discharged by the filing of new articles of association, or the taking of a new name.

But even if the plaintiff's claim against the new company could be regarded as doubtful, and liable ultimately to be held invalid, still an obligation fairly and understandingly given in settlement and discharge of it would be good. And equally so, if it turns out afterward that a successful defence against the contract might have been made. *O'Keson* v. *Barclay*, 2 Penn. 531; *Russell* v. *Cook*, 3 Hill, 504; *Miller* v. *Hawker*, 66 Ill. 18 5; Chit. Cont. 43, 44.

Even the moral obligation, which under the circumstances arose in favor of the plaintiff, would be a sufficient consideration, especially as it arose on a written agreement. *Seaman* v. *Price*, 2 Bing. 437; *Lee* v. *Muggeridge*, 5 Taunt. 37; *Suffield* v. *Bruce*, 2 Stark. 175; *Fleming* v. *Hayne*, 1 Stark. 370.

The charge was more favorable to the defendant than it should

have been, for, although the contract was found to be revocable, yet, if the plaintiff claimed the contrary, and the point was in dispute, an undertaking in settlement of it would be good, especially when such undertaking was given by individual stockholders to procure a discharge and settlement, and not by the company itself, which alone had power to revoke. Of these instructions, therefore, the defendant cannot complain. And the finding of the facts under them disposes of the case.

The recovery was warranted by the declaration. The evidence supported the special count. The plaintiff was entitled to recover under the common counts. The defendant's undertaking, a consideration being proved, was the same in character and legal effect as a promissory note, which may always be given in evidence, as against the maker, under the general counts. *Doon* v. *Ravey*, 49 Vt. 293. Wherever a contract is executed on one side, and nothing remains but the payment of a definite, past-due sum of money on the other, general assumpsit will lie. *Cutter* v. *Powell*, 2 Sm. Lead. Cas. 17, and notes. The organization of the Massachusetts company was sufficiently proved. The evidence fully established it. Even if its strict legality as a corporation could be questioned, it would be immaterial. That the parties were carrying on business as a corporation, and supposed themselves to be one, is plain. If, by any mistake or failure to comply with the law, they were not in strictness of law incorporated, then they stood as a voluntary association or partnership. Their contract in that capacity was equally valid, and would be equally obligatory on the reorganized company. And the discharge or settlement of it would equally afford a consideration for the defendant's promise.

The opinion of the court was delivered by

PIERPOINT, C. J. This is an action of assumpsit based upon a written agreement or obligation executed by John B. Page, Redfield Proctor, and John J. Myers to the plaintiff, in which they stipulated that the plaintiff should have within sixty days either six thousand dollars or two hundred and forty shares of the stock of the Sutherland Falls Marble Company, at their option. This

obligation was signed by the said Page, Proctor, and Myers. Page and Proctor settled with the plaintiff each for the one third of said amount, and this action is now brought against the said Myers to recover for his one third of the amount, said parties not electing to pay the stock.

The plaintiff, in his declaration, for the purpose of showing the consideration for the aforesaid agreement, alleges that on the 21st day of November, 1870, he had a certain contract with the Sutherland Falls Marble Company, a corporation chartered, organized, and doing business under the laws of Massachusetts, and that the surrender of such contract constituted the consideration for the contract in issue.

Upon the trial in the County Court, the plaintiff, in support of his declaration, and to show the existence of the alleged company in Massachusetts, offered what purported to be the book of records of a corporation under the laws of Massachusetts, called the Sutherland Falls Marble Company, and proved by one of the directors of that company that the book was the record book of said company, that the records were in the handwriting of, and were authenticated by, J. D. Bryant, who was the clerk of the said company during the whole time of its existence. The book was objected to as not having been sufficiently proved, the records were objected to, and an objection also taken on the ground that there was no proof of a law of Massachusetts under which said company was organized. The evidence was admitted, to which the defendant excepted ; and the question here is, was that evidence properly admitted ? We think it was. The Massachusetts corporation is no party to this proceeding ; neither is this action based upon any contract made with such company. The question as to the existence of the corporation comes up collaterally. All that the plaintiff was required to show was that he had a contract that was valid and binding between that corporation and himself. To do this, all that was necessary was, to show that the corporation held itself out to the world, and assumed to act, as a corporation regularly organized under an act of incorporation, or the general laws of the State ; and that it contracted with him in that capacity. For this purpose the books and records of the corporation

showing such an organization, identified by a witness having actual knowledge of the fact, and showing that it acted and did business under the same, was admissible. Showing this, and that acting in such capacity it entered into the contract alleged with the plaintiff, is sufficient to establish the validity and binding force of the contract as between the parties. The corporation could not then deny its corporate existence, or the regularity of its organization. It is said in Angell & Ames on Corporations, 648, note, that, " persons who have contracted in a corporate name are estopped to deny the sufficiency of their organization," citing 25 N. Y. 574, 26 N. Y. 75, and 11 Ohio, 516. The cases to which we have been referred in the argument, wherein it was held that proof of the act of incorporation, or the law under which the corporation was organized, was necessary, were cases in which the corporation were parties, and in which it was necessary to show their corporate existence to give them a *status* in court; but that is not the case here. All that the plaintiff is required to do in this case is, to show that the party with whom he contracted professed to be a corporation, and contracted with him as such. That is sufficient to support the allegation that it is a corporation, as the corporation is not then at liberty to deny its existence. We think the evidence which was introduced to that end was properly admitted.

The plaintiff having established the existence of a valid contract with the corporation in Massachusetts, the question then arises, was that contract of such a nature that its surrender by the plaintiff could be a sufficient consideration for the contract upon which this suit is predicated ? It must be kept in mind that the corporation in Massachusetts and the corporation in Vermont, in all their substantial elements were one and the same. All the property and assets of the Massachusetts company were transferred to the Vermont company, and all the debts and liabilities of the former were assumed by the latter. The business and the place of business were the same, and the persons interested in and having the management and control of the business were the same.. The only material change was in the source from which the corporate existence was derived. The nature, object, and terms of

the contract that the plaintiff had with the Massachusetts company were known to parties who entered into the contract now in issue. On the trial in the County Court the defendant claimed that by the terms of the contract with the Massachusetts company, the contract might be terminated at any time at the option of either party, and for that reason its surrender by the plaintiff could not be a sufficient consideration for the contract now in issue. The plaintiff claimed that although there was no definite period during which the contract was to continue, yet, the understanding was that it should continue as long as the sales showed a satisfactory increase from what they had been. How the contract was in this respect, was a question for the jury upon the whole evidence bearing upon that point. The plaintiff in his testimony, in answer to the question, " Was there any definite time fixed as to this contract and how long it should run ?" answered, " No sir, it was subject to termination by either party at option." He afterwards said the understanding was that it should continue as long as the sales showed a satisfactory increase from what they had been—so long as they seemed to be doing well. There was other evidence tending to show what the contract was in this respect. The court submitted the question to the jury under a charge that was quite as favorable to the defendant as he had a right to ask, and the jury found the contract to be as the plaintiff claimed. Neither party had attempted to terminate it, so that it stood as a subsisting obligation, and passed from the old to the new corporation with all the other obligations and liabilities assumed by the new corporation. Page, Proctor, and Myers understood perfectly what that contract was, and they regarded and treated it as a subsisting obligation, and negotiated with the plaintiff for its surrender, and the result was the plaintiff did surrender it, and took therefor the obligation on which this suit is founded. Such a consideration we think sufficient. This view of the case covers substantially all the points made upon the trial below. The motion in arrest was properly overruled. The declaration is clearly sufficient after verdict.

*Judgment affirmed.*