WILLIAM WERTHEIMER AND MAX WERTHEIMER v. GEORGE S. HOSMER, CIRCUIT JUDGE OF WAYNE COUNTY.

*Landlord and tenant—Lease—Mode of occupation—Covenants— Injunction.*

1. A consent by a lessor that a third party may occupy the leased premises for a specified business under the lessee, who is to be responsible for the rent, is a restrictive waiver of conditions not to sublet or carry on any other than the kind of business to which the lessee is restricted by the lease, and applies only to such third person and to his specified business.

2. Covenants affecting the mode of occupation and enjoymert of leased premises run with the land, and the assignee, thι u ;h not named, may be restrained by injunction from violating the same.

So *held,* where a lease restricted the use of the building to the "sale of teas, coffees, and similar goods," and the lessors consented to its use by a sublessee for the sale of small musical instruments and sheet-music, who sublet it to be used for a misfit clothing house, which use was enjoined at the suit of the original lessors.

*Mandamus.* Submitted October 28, 1890. Denied November 12, 1890. .

Relators applied for *mandamus* to dissolve an injunction. The facts are stated in the opinion.

*Sloman, Berry & Duffie,* for relators.

*Alexis C. Angell,* for respondent.

LONG, J.   This is an application for *mandamus* to compel the Honorable George S. Hosmer, circuit judge of the Wayne circuit, to dissolve an injunction issued on an *ex parte* showing, restraining the defendants, who are the petitioners here, from using and enjoying certain real estate, situate in the city of Detroit.

It appears that William B. Clark, Frank H. Clark, and Fanny B. Lane are the owners of a store building in the Detroit Opera House block.  They filed their bill for injunction.  The bill upon which the injunction was issued states substantially that on September 15, 1887, the complainants made a written lease of the store to one Carl H. Michell, to continue to April 30, 1891, by the terms of which Michell was to have the use of the store, to be occupied by him for the sale of teas, coffees, spices, and similar goods.  Michell occupied for such purposes until about the month of April, 1890, when he moved into the store next adjoining, and requested the owners to permit one Thomas S. Sprague to occupy the premises for the sale of small musical instruments, and sheet-music, under him.   The lease contained a clause that Michell should not assign or transfer the lease, or sublet the premises, or any part thereof, without the written assent of the lessors.   Upon Michell's request, however, the owners, by their agent, assented to the occupying by Sprague under Michell, Mr. Michell to be holden for the rent; and he has continued to pay the rent therefor.  Sprague continued in possession until the month of September, 1890, when he moved his entire stock out of the store, and vacated it.   The bill states that on or about October 13, 1890, complainants discovered that William Wertheimer and Max Wertheimer had possession of the key of the store,

and pretended to have some rights thereto, and requested permission to occupy the same for a misfit clothing house, which the complainants refused, and that the Wertheimers were then making repairs and changes in the interior of the store; that complainants then demanded the possession, and that they should desist from making such repairs; that the Wertheimers did desist from making repairs till about October 20, 1890, when they built platforms upon the floor, and caused shelving to be placed therein, and lettering upon the door advertising their business.

It is further alleged that the complainants never assented to the possession of the said Wertheimers, and that they have no right or lawful authority to occupy or use said store for a misfit-clothing house. It is also alleged in the bill that the said Wertheimers pretend and claim that they have rented said store from Sprague, and for the unexpired term under the Michell lease, and that they now propose to open the same for a misfit-clothing house. It is further alleged that the said Wertheimers are wholly financially irresponsible. It is prayed in and by the bill that the Wertheimers be perpetually enjoined from interfering with the floors, walls, windows, doors, or the other parts of the interior or exterior of said store, and from placing any sign or signs upon the same, and from making use of or occupying said store or any part thereof.

Upon the filing of this bill, an injunction was issued as prayed. The defendants, without answering the bill, entered a motion to dissolve the injunction, upon the following grounds:

1. Because the complainants have an adequate remedy at law.

2. Because the complainants do not, by their bill, make out a case entitling them to the relief prayed for.

3. Because the injunction was issued *ex parte*, and without any notice to the defendants.

4. Because no bond was filed before said injunction issued as required by the statute.

5. Because said bill is not signed by the complainants or either of them.

6. Because this court has no authority by injunction to oust said defendants from the possession and enjoyment, or interfere with the enjoyment of said premises, except after the final hearing.

7. Because said defendants were in possession under a valid lease.

8. Because the material averments in said bill have been denied under oath.

This motion was based upon the affidavits of the defendants and Thomas S. Sprague and Robert Gray, and the files and records in the case. The motion came on to be heard before Hon. George S. Hosmer, and counter-affidavits were filed by the complainants. Upon the hearing, the court refused to dissolve the injunction. Application is now made to this Court to compel the circuit judge to set aside this order, and to dissolve the injunction. The injunction commands the defendants that they do desist and refrain from in any manner occupying or using the premises mentioned. Michell and Sprague were also made parties, and they are also enjoined from using the premises for any purpose except for the sale of teas, coffees, spices, etc., and of small musical instruments, and from permitting any other person to occupy the premises or any part thereof.

The affidavits of the defendants show that they, in renting the store, dealt only with Sprague, and had no knowledge that Michell had anything to do with the premises; that Sprague was in possession, and represented that he was authorized to lease the premises to them; that, after obtaining possession, they proceeded to repair the interior of the store at large expense; that, on October 13, they requested leave of Sprague to paint the outside of the store, and were referred by him to the solicitor

of the complainants; that, upon applying to him, they were informed that he would not allow them to occupy, and requested them to desist from making repairs; that they did so until taking counsel, when they were advised they had the right to hold the premises, and, in reliance upon such advice, they have incurred about $1,000 expense, and have purchased $5,000, and upwards, of goods, which are in transit, and expected daily to arrive.

There is no question in the case now that the bill was not signed and verified by the complainants. This was permitted to be done in the court below, aud that question is not now pressed in this Court. The complainants in the injunction bill claim the right to have the injunction retained upon the grounds—

1. That Sprague, from whom the relators claim to have leased, had no right to give them a lease, and that relators were notified of this within three days after they took their lease; that Sprague's right could be no greater than Michell's, and that he (Sprague) was bound by the covenants of the original lease,—that he could not sublet without the permission of the lessors; that the mere fact of having consented to Sprague's occupancy was not a waiver of the terms of the written lease, only as applied to Sprague; that it is not true that, when Sprague entered, this requirement of written consent was waived; that the general rule that a license once given removes all restrictions applies only where expressly or impliedly the lessor is chargeable with intention to waive the restrictions absolutely; that the rule does not interfere with the lessor's right to make a restrictive waiver.

2. That complainants had a right to a remedy by injunction,—there was no adequate remedy at law; that proceedings before a commissioner could, by appeal, be stayed until after the expiration of the principal lease.

The lease itself is not set out in the record before us, but by reference to the bill it appears that the clauses of the lease to which reference is made. are, substantially, that "the premises should be occupied for the sale of teas, coffees, spices, and similar goods," and that

"Michell should not sublet or permit the occupancy by any other party, without the written consent of the lessors." It is conceded by the bill that the lessors assented to the leasing or subletting by Michell to Sprague.

A covenant not to assign or underlet the leased premises without the assent of the lessor is frequently inserted in a lease, and is regarded as a fair and reasonable covenant. But a license once given removes the restriction forever, as the condition is treated as entire, and therefore not capable of being waived or released as to part; but in order to have that effect it must be such a license as is contemplated in the lease,—that is, if the lease provides that the license shall be in writing, an oral license is not good. It is not to be understood, however, that this written stipulation not to sublet unless by consent of the lessor, in writing, may not be waived by an oral agreement; and such is not the contention of the counsel for the complainants here. The agreement to waive the condition as to Sprague, however, was not a waiver of the condition in the lease as to other parties, or for the carrying on of other business not contemplated by the lease, or the business to be carried on by Sprague. The consent that Sprague might enter and conduct the business of selling small musical instruments and sheet-music was a restrictive waiver of the condition, and applied only to Sprague and the business to be carried on by him. It gave Michell no right to lease to any other party, or to carry on a different business; and Sprague certainly could gain no greater rights than Michell had. The terms of the lease were not waived, but a license given to Sprague to enter and carry on that particular business, Michell to be holden for the rent. Sprague had no right to sublet, and Michell no right to sublet to any one but Sprague, and for that particular business.

The words contained in the lease, "to be used for the sale of teas, coffees, spices, and similar goods," amount to an express covenant not to be used for any other business. Covenants are not infrequently inserted in leases that the lessee shall not carry on particular trades upon the premises. This precaution often becomes necessary, not only for the protection of the premises from injuries which might otherwise be done to them, but to prevent their respectability being lessened, and their good-will thereby diminished. Covenants of this kind, as they affect the mode of occupation and enjoyment, run with the land, and the assignee, though not named, will be liable to an action for damages, and may be restrained by injunction.

It is quite apparent that any legal remedy which the complainants might have pursued would not have been adequate. It is not a question merely of damages, but the right of complainants to control the premises or to put them to such uses as they might deem best. They restricted the use by the written lease, and it cannot be said that, by consenting to Sprague's use and occupation, complainants had waived or abandoned all rights over the property, so that it might be occupied by any person whom Sprague might see fit to put in, or with a business however obnoxious to the complainants, or detrimental to the good-will of the premises.

The court below was right in refusing to set the order aside, and in retaining the injunction. The writ must be denied.

The other Justices concurred.