## HAMMOND v. HIBBLER.

1. LANDLORD AND TENANT—LEASES—COVENANTS—WAIVER.

By granting permission in writing to a tenant, "but not to his heirs, assigns, executors, administrators or any other person," to conduct a bar in connection with a hotel which he was operating on premises leased subject to a restriction against selling intoxicating liquors, the landlord did not waive his right to enforce the restrictive clause against assignees of the hotelkeeper's interest.

2. SAME—CONSTRUCTION.

A restriction contained in a lease for a term of years should receive more favorable consideration than a restriction in a deed.

OSTRANDER, C. J., and STEERE and STONE, JJ., dissenting.

Appeal from Wayne; Hosmer, J. Submitted April 13, 1911. (Docket No. 114.) Reargued October 10, 1911. Decided December 29, 1911.

Bill by Edward P. Hammond and others against Frank B. Hibbler to enjoin defendant from conducting the sale of intoxicating liquors contrary to the terms of a written lease. From a decree for complainants, defendant appeals. Affirmed.

*A. B. Hall*, for appellant.

*Luman W. Goodenough*, for appellees.

OSTRANDER, C. J. The material facts are that in the year 1906 complainants leased certain premises in the city of Detroit for a period of 10 years to Charles Hinkle and Allan Nowlin. The lessees, under a permissive clause in the lease, assigned it to the Hinkle-Nowlin Company, a corporation. There were two buildings upon the property, now known, respectively, as the Gayety Theater and the Hotel Harrington. In 1907 the assignee of the lessees leased the hotel to James W. Harrington for the balance of the term. In and by the original lease, it was agreed "that no building or part thereof be sublet for or used as a saloon, or that the sale of intoxicating liquors of any form be permitted on said premises," but in the lease from the Hinkle-Nowlin Company to Harrington it was provided that if Harrington could obtain written permission from the complainants to sell liquor in the hotel his lessors would consent thereto. Complainants gave this permission to Harrington in accordance with a certain written agreement made between them, which provided, among other things, that, so long as a respectable hotel was conducted on the premises, the privilege of selling liquor therein would be extended to Harrington, "but not to his heirs, assigns, executors or administrators, or any other person" For this privilege Mr. Harrington agreed to pay complainants $100 a month. By the same agree-

ment, complainants agreed to loan Mr. Harrington $4,000, to be used in constructing a new front or addition to the hotel. They advanced this money, and for security took a mortgage upon the leasehold interest. A new front was added to the building, and the bar was opened early in the year 1908. During the latter year, Mr. Harrington borrowed money of the defendant, and gave him a second mortgage upon the said leasehold, and thereafter Hibbler advanced still more money, some of which was used to pay interest on the first mortgage and to pay for the bar privilege. In September, 1908, complainants wrote to Harrington a letter, a copy of which was sent to defendant, stating that, unless the bar was conducted in a first-class manner, the privilege of selling liquors would be revoked; and, further, that complainants refused to recognize the defendant, Hibbler, as entitled to any of the privileges granted to Harrington. Late in the same summer the Pittsburgh Plate Glass Company, which had furnished materials for rebuilding the hotel, obtained a judgment against Harrington, and levied upon his leasehold interest. Upon a sale under the levy, this interest was sold to the judgment creditor, and by it, December 3, 1908, to the defendant, Hibbler, and his brother, who bought subject to complainants' prior mortgage. Hibbler also obtained from Harrington a quitclaim deed of his interest in the leasehold premises. Hibbler applied to complainants for an agreement extending the same privilege to him in relation to the bar as had been given to Harrington. The terms of an agreement were stated by complainants, but no agreement made. Hibbler was notified in January, 1909, that the privilege of selling liquor upon the premises would not be extended to him, and that he must discontinue the sale of liquor at once. He made no reply, but continued the sale of liquor.

Complainants filed their bill, setting up the facts, the substance of which has been stated, and asked for a decree perpetually restraining defendant from using the premises, or any part of them, for a saloon, or selling liquor upon

the premises in any way whatsoever. A preliminary injunction was also asked for. It is not charged in the bill that the hotel and bar are not properly conducted, and no competent evidence of the fact appears in the record. It is charged that if the sale of liquor is continued the value of the property will be greatly depreciated. The preliminary injunction was refused, the bill was answered, the cause was heard upon pleadings and proofs taken in open court, and a decree entered in accordance with the prayer of the bill. The defendant has appealed.

It is claimed by appellant that the giving to Harrington of the license or permission to sell liquor operated, in law, to remove or release the restriction concerning the sale of liquor upon the premises. It is also claimed that by virtue of the execution sale the Pittsburgh Plate Glass Company succeeded to the rights of Harrington, and that Hibbler, the defendant, succeeded to the rights of the Plate Glass Company.

It is the law of this State that a condition or covenant in a deed of real estate, restricting the use to which the property may be devoted, and not opposed to sound public policy, may be sustained and enforced if the party in whose favor it is made or reserved has an interest in the observance of the condition or covenant. *Smith* v. *Barrie*, 56 Mich. 314 (22 N. W. 816, 56 Am. Rep. 391); *Watrous* v. *Allen*, 57 Mich. 362 (24 N. W. 104, 58 Am. Rep. 363); *Chippewa Lumber Co.* v. *Tremper*, 75 Mich. 36 (42 N. W. 532, 4 L. R. A. 373, 13 Am. St. Rep. 420); *Jenks* v. *Pawlowski*, 98 Mich. 110 (56 N. W. 1105, 22 L. R. A. 863, 39 Am. St. Rep. 522); *Whealkate Mining Co.* v. *Mulari*, 152 Mich. 607 (116 N. W. 360, 18 L. R. A. [N. S.] 147; *Reilly* v. *Otto*, 108 Mich. 330 (66 N. W. 228); *Wertheimer* v. *Wayne Circuit Judge*, 83 Mich. 56 (47 N. W. 47).

In the case last cited, and which, it appears, is relied upon by both parties here, the lease of a store was made for the sale of teas, coffees, spices, and similar goods, and the lessee was permitted to assign the lease or to sublet

the premises only by the written consent of the lessor. Upon the application of the lessee, oral consent was given for the occupancy of the premises by another than the lessee, under the lease, who remained responsible for the rent. This consent was in its terms restrictive; the use of the premises specified being for the sale of small musical instruments and sheet music. It was later discovered that the Wertheimers, who were not the persons for whose occupancy consent had been given, were in possession of the premises, and they asked permission of the lessor to use them for a misfit clothing house. Permission was refused. The bill charged that the Wertheimers were in possession without the consent of the lessor, and proposed to continue possession and use the premises for the unexpired term for a misfit clothing house, and prayed for an injunction. An injunction was granted, and the cause was before this court on an application for a writ of mandamus to compel the court below to dissolve the injunction. It was held that:

"The terms of the lease were not waived, but a license given to Sprague to enter and carry on that particular business; Michell to be holden for the rent. Sprague had no right to sublet, and Michell no right to sublet to any one but Sprague, and for that particular business."

It was further held that the words in the original lease, "to be used for the sale of teas, coffees, spices, and similar goods," amounted to an express covenant not to use them for any other business; that it was a covenant running with the land; and that, while the written stipulation not to sublet, unless by consent in writing, might be waived by an oral agreement, a written consent was necessary to release the covenant and remove the restriction as to subletting, because such was the requirement of the lease. It will be seen that the opinion deals with two covenants—one not to sublet without permission given in writing; one not to use the premises for any but the specified business—and that the conclusion arrived at was that the oral permission to sublet to a particular person to

carry on a specified business would not be enlarged or held to operate as a release of the covenants.

In the case at bar, the restrictive covenant in the lease, while mutually agreed to by the lessors and the original lessees, is presumed to have been inserted for the benefit of the lessors. The lessees would require no such covenant, since they controlled the use of the premises for the term. The essence of the restriction is indicated by its terms. It is not aimed at sales of liquor by a particular person, but at any and all sales. There can be no doubt that the lessors might have insisted that no liquors should be sold upon the demised premises during the term, and might have enforced the restriction by injunction; see cases above cited and those collected in 18 Am. & Eng. Enc. Law (2d Ed.), p. 637; and as well against assignees, or sublessees, with notice of the restriction, as against the original lessee. It was said by this court, in *Smith* v. *Barrie, supra,* that:

"In those cases in which the condition has had for its purpose a restraint upon the business of dealing in intoxicating drinks, the interest of the grantor in its enforcement has been specially prominent in the mind of the court in passing upon the condition."

But, whether we consider the interest of the lessors separate from the leased premises, or their interest in the premises as property, the conclusion must be that they have distinctly waived the covenant, so far as it affects sales of liquor in the hotel. They consented that liquor might be sold in the hotel. They were willing that defendant should continue to sell liquor there, and have proposed, or stated, the terms upon which consent would be formally given. The lessees have expressly consented that the restriction be released, so far as it affects sales of liquor in the hotel. May the lessor now have the aid of a court of equity to enforce the restriction? Complainants say the release or waiver was itself restrictive and limited to sales of liquor by Harrington. Is the fact important? The essence of the restrictive covenant is, as

has been pointed out, not that sales of liquor shall be made by certain persons only, but it is that no sales shall be made on the premises. It is waived, essentially, when any sales, by any person, are permitted. It does not follow, however, that because equity will not enforce performance of the covenant by injunction, defendant may insist upon a release of the restriction without performing the agreement for the waiver. It would be inequitable if he were permitted to do so. In his answer, defendant professes that he is ready to pay all charges which Harrington agreed to pay to secure the waiver. We think he should be permitted to do so.

The decree making the injunction perpetual will be affirmed, unless within 40 days from the entry of the decree in this court defendant pays to complainants so much of the sum of $100 per month as remains unpaid. Upon such payment being made, the injunction will be dissolved, with costs of both courts to defendant. Otherwise complainants will recover costs.

STEERE and STONE, JJ., concurred with OSTRANDER, C. J.

BROOKE, J. My Brother OSTRANDER says:

"The essence of the restriction is indicated by its terms. It is not aimed at sales of liquor by a particular person, but at any and all sales."

This is true; but it is equally true that the essence of the waiver is to permit liquor to be sold upon the premises by Harrington only. Many reasons, aside from the increased money rental, might operate upon the minds of the lessors to induce them to modify or waive the restriction as to a particular individual. The reputation of that person as to character and respectability, and particularly as to his being a law-abiding citizen in the conduct of the business about to be engaged in, would have great weight. I am therefore unable to agree with my Brother OSTRANDER when he says that the restriction is waived essentially when any sales by any person are permitted.

Moreover, I am of opinion that a restriction in a lease for a term of years should receive much more favorable consideration than a restriction in a deed. While it may be said of both that they are in derogation of the grant, yet in the case of the deed the grantor has parted with his right to repossess himself of the demised premises in the future, while in the case of a lease the lessor contemplates such repossession, and, at the expiration of the term, must accept his premises (if improper or disreputable use has been made of them) burdened by an unsavory reputation, which might, in conceivable instances, result in large financial loss.

As was said in *Wertheimer* v. *Wayne Circuit Judge*, 83 Mich. 56 (47 N. W. 47):

"Covenants are not infrequently inserted in leases that the lessee shall not carry on particular trades upon the premises. This precaution often becomes necessary, not only for the protection of the premises from injuries which might otherwise be done to them, but to prevent their respectability being lessened, and their good will thereby diminished."

It cannot be questioned that the sale of liquor may be so conducted upon premises as to injure their reputation little or not at all. Upon the other hand, if the lessee caters to the low, the vicious, and the dissolute (and many in the business do so cater), it seems plain that the leased premises would acquire such a reputation as would seriously affect their value to the lessors at the expiration of the term.

I am of opinion that the decree should be affirmed.

MOORE, McALVAY, and BLAIR, JJ., concurred with BROOKE, J.

BIRD, J., did not sit.