WHITE v. HUBER DRUG CO.

1. LANDLORD AND TENANT — LEASE — ASSIGNMENT — CONDITIONS— COVENANT AGAINST SUBLETTING.

Covenants not to assign or underlet the leased premises without the assent of the lessor are commonly used and are recognized as valid and reasonable. The purpose of such a stipulation is to reserve to the landlord the privilege of determining who shall occupy the premises, and, where the right is clearly reserved to the lessor, he may insist upon it if he wishes to, without regard to the qualifications of the proposed assignee.

2. SAME—CONSTRUCTION—TRANSFER.

While it has been stated that covenants against assignment or underletting are not favorably regarded by the courts and are liberally construed in favor of the lessee, this means no more than that the scope of the word assignment will not be enlarged by the courts, and that the covenant will not be considered as violated by any technical transfer that is not fairly and substantially an assignment, as where a tenant without license from his landlord takes a third party into partnership and lets such party into joint possession with him.

3. SAME—EVIDENCE—CORPORATIONS—SUCCESSOR.

And where the original tenant, a corporation, becoming insolvent, transferred all its assets to a new company in which the principal stockholder was the largest stockholder and chief creditor of the insolvent, holding all but three shares of the new company, which continued the business of the original corporation under a new name, assuming all the debts of the old corporation, the new company was not so identical with its predecessor as to be treated as the same corporation or successor thereto so as to entitle it to occupy premises that had been rented under a lease prohibiting subletting or assigning the leasehold interest.

4. SAME—OPTION—WAIVER.

The lessor does not waive his rights under a lease which contains a prohibition against subletting or assigning the interests of the lessee by executing an option with the corporation hiring the premises granting thereto and to "its successors and assigns" a right of renewal of the lease at their option. The successors and assigns must be taken to refer only to such persons as the landlord would consent to or to whom the interest passed by operation of law.

Error to Kent; Cross, J., presiding. Submitted April 20, 1915. (Docket No. 104.) Decided March 30, 1916.

Summary proceedings by Sophie A. White and another against the Huber Drug Company, a corporation, for the recovery of possession of certain real estate. From a judgment of the commissioner, complainants

appealed to the circuit court. Judgment for defendant on a verdict directed by the court. Complainants bring error. Reversed.

*Chas. E. Ward,* for complainants.
*Kleinhans, Knappen & Uhl,* for defendant.

PERSON, J. These are proceedings brought before a circuit court commissioner to obtain possession of certain real estate in the city of Grand Rapids known as the Addis Block. In 1906, Maria Addis, then owner of the property, made a lease thereof in writing to the Walter K. Schmidt Company, a corporation, for a term of five years from the 1st day of February, 1911. The lease contained a covenant that the lessee should not assign nor transfer the same, nor sublet the premises, or any part thereof, without the written assent of the lessor; and it was further provided that upon default in any of the covenants of the lease the lessor might re-enter and repossess herself of the premises. Upon the death of Maria Addis, which occurred before the transfer of the lease as hereinafter mentioned, the complainants, as tenants in common, succeeded to the ownership of the property. The Walter K. Schmidt Company remained in possession until in December, 1913, when it transferred all of its property, including its rights under the lease, to the defendant corporation. It is claimed by the complainants, as the grounds for these proceedings, that such transfer was in violation of the condition against assignment, and that all rights under the lease were thereby forfeited. On the other hand, the defendant insists that such transfer did not amount, in substance, to an assignment of the lease, because, it says, the defendant company was but a re-organization of, and is identical with, the Walter K. Schmidt Company, and took a transfer of the lease as successor to that company. It also insists that Mrs.

Panting, one of the complainants, by signing a certain option hereinafter mentioned, had consented that the Walter K. Schmidt Company might assign the lease. The defendant prevailed before the circuit court commissioner, and also before the circuit court. In directing a verdict the circuit judge held that there was no proof of Mrs. Panting's consent to the transfer; but as to the transfer itself, he held that it was not such an assignment as the lease prohibited inasmuch as the defendant company was substantially identical with the company it succeeded.

The case is brought here by complainants; and the questions before this court are:   *First,* whether the transfer of its rights under the lease by the Walter K. Schmidt Company to defendant was, in substance and in fact, an assignment of the lease; and, *second,* whether Mrs. Panting, by signing the option, consented to an assignment of the lease.   These questions will be considered in their order.

*First.* "A covenant not to assign or underlet the leased premises without the assent of the lessor is frequently inserted in a lease, and is regarded as a fair and reasonable covenant." *Wertheimer* v. *Circuit Judge,* 83 Mich. 56, 61 (47 N. W. 47).

See, also, *Marvin* v. *Hartz,* 130 Mich. 26 (89 N. W. 557).

The purpose of such a stipulation is to reserve to the lessor the right to say who shall occupy the premises; and where the right is clearly reserved to the lessor, he may insist upon it, if he wishes to, without regard to the qualifications of the proposed assignee; that is, it is not for the court to determine whether the proposed assignee would, or would not, make as good and acceptable a tenant as the lessee himself.

It has been said, however, that covenants against assignment or underletting are not favorably regarded by the courts and are liberally construed in favor of

the lessees. But this means only that the scope of the term "assignment" will not be enlarged by the courts, and that the covenant will not be considered as violated by any technical transfer that is not fairly and substantially an assignment; as where a tenant without license from his landlord takes a third party into partnership and lets such party into joint possession with him. *Roosevelt* v. *Hopkins*, 33 N. Y. 81. For this reason, while the defendant, the Huber Drug Company, claims to have succeeded to all the rights of the Walter K. Schmidt Company under the lease, it yet insists that there has been no actual and substantial assignment, because, it says, the defendant company is practically identical with the Walter K. Schmidt Company. The facts relied upon by the defendant to show the supposed identity are as follows:

The Walter K. Schmidt Company, which for convenience will be referred to as the old company, in December, 1913, had become insolvent. It then had capital stock issued and outstanding to the par value of $30,090, which was held by 24 stockholders. Its president, Henry Huber, Sr., was the largest holder of its stock, but his holdings fell far short of a majority. Mr. Huber had loaned considerable money to the company and had also guaranteed much of its other indebtedness, so that, directly and indirectly, he was its heaviest creditor. Under these circumstances it was decided by Mr. Huber and his friends that he ought to secure absolute control of the company, and of its assets, so as to save himself, as far as possible, from loss. Two ways of doing this seem to have occurred to Mr. Huber and his legal advisers, one of which was to get the other stockholders to assign their stock in the existing company to him, while the other was to organize a new company, of which he should hold practically all of the stock, and then to obtain a transfer by the old company of its assets to the new company.

The latter course was finally adopted, for the reason, apparently, that all of the other stockholders could not be prevailed upon to assign their stock to him without compensation, or, perhaps, could not be prevailed upon to assign it at all. So another company was organized by Mr. Huber under the name of the Huber Drug Company, the defendant herein, which will be spoken of as the new company. This new company was capitalized at $1,000, of which $500 were paid in, and 50 shares of stock were issued, of which 47 shares were issued to Mr. Huber, and one share each to three other gentlemen, making four stockholders in all. These four stockholders of the new company included the officers of the old company, so that the same men who had been officers of the old company became the officers of the new company. The purposes of the incorporation also, as stated in the articles of association of the new company, were the same as those stated in the articles of association of the old company. Thereupon the directors of the old company, in accordance with a vote of the majority of its stockholders, executed a bill of sale by which it transferred to the new company all of the goods, chattels, moneys, debts, notes, good will, things in action, contracts, agreements and all other assets whatsoever and wheresoever of the old company, together with the right, on the part of the new company, to use the name of the old company; and in consideration thereof the new company assumed all of the old company's debts and liabilities. After making this transfer to the new company the old company, under the provisions of section 12 of Act No. 232, Pub. Acts 1903 (2 Comp. Laws 1915, § 9028), filed with the secretary of State a notice that it had been dissolved by sale of all its property and franchises; and the new company proceeded to amend its articles of association so as to change its name to that of the old company; that is, to change its name from Huber Drug Com-

pany to Walter K. Schmidt Company. But when the new company attempted to file a certificate of such amendment with the secretary of State, it was found that another corporation in the city of Grand Rapids had already adopted the name of the old company, and the certificate of amendment was refused and rejected. It seems, nevertheless, that thereafter the new company assumed to use the name of the old company in the transaction of its business. Immediately, also, upon the transfer of its assets by the old company to the new, the latter took possession of the premises in question and control of the business of the old company. For some months thereafter the new company paid rent under the lease to the agent of complainants, who were nonresidents of the State, but in making such payments the new company signed the name of the old company to its checks. Neither complainants nor their agent, when receiving this rent, knew of the transfer by the old company to the new, nor did they know that any change had taken place in the control of the premises. Upon learning of the transfer complainants refused to receive further rent from the new company, declared the lease terminated by the violation of the condition against assignment, and began these proceedings to obtain possession of the property.

These facts, in our judgment, instead of showing an identity between the new company and the old one, show the reverse. It is true that the reorganization of a corporation is sometimes authorized by statute, and the statute may provide that the new corporation shall succeed to all the rights and assets of the old corporation. *First Commercial Bank* v. *Talbert,* 103 Mich. 625 (61 N. W. 888, 50 Am. St. Rep. 385), and *Hicks* v. *Steel,* 142 Mich. 292 (105 N. W. 767, 4 L. R. A. [N. S.] 279), are cases of this kind. In each of these cases a national bank had reorganized as a State bank under an express provision of law authorizing it to do so.

And they were held to have succeeded, by force of the statute, to the rights and assets of the national banks thus reorganized. Frequently, also, statutes authorizing the consolidation of corporations provide that the consolidating company shall succeed to the property and rights of the constituent companies. In all of these cases the succession is by force of the statute. But in the case at bar there was no statute authorizing the reorganization of the old company into the new, nor was there any statute by which the new company was empowered to succeed to the rights and assets of the old company.

And there are instances where, without the aid of the statute, a corporation has reorganized under such circumstances that the new company has been held to succeed to the assets of the old company as a matter of right. *Reynolds* v. *Meyers*, 51 Vt. 444, was a case of this kind. There the entire body of stockholders of a Massachusetts corporation reincorporated under the laws of Vermont, and the new corporation was held to have succeeded to a nonassignable contract of the old company.

In *New York Bank-Note Co.* v. *Engraving & Printing Co.*, 28 App. Div. 411 (50 N. Y. Supp. 1093), Judge O'Brien said:

"The stock of the new company was distributed ratably among the stockholders of the old. Technically the new company was a distinct legal entity from the old, but to all intents and purposes it was the same concern. * * * The new company had the same assets as the old, the same business, and, so far as appears, the same charter rights. * * * In the absence of special circumstances, there should, we think, be no hesitation in holding that the reorganization of a corporation does not prevent the new company from succeeding to all the rights and liabilities arising under contracts of the old."

In that case the stockholders of a New Jersey corpo-

ration had reorganized as a body under the laws of West Virginia. In both of these cases the reorganization amounted simply to a change in charters. The same men who had been incorporated under the laws of one State reincorporated under the laws of another State; and in the sense in which stockholders are said to be the equitable owners of the corporate property, there had been no change in the equitable ownership. The case at bar is altogether different. Here the object was not to reincorporate substantially the same stockholders, but to get rid of most of the stockholders of the old company.

The fact that one company purchases the assets and assumes the liability of another company does not make the two companies identical. Nor does the further fact that the purchasing company continues the business purchased at the old location make them identical. Any four men not interested in the old company might have organized a corporation for the purpose of purchasing the assets and assuming the liabilities of the Walter K. Schmidt Company; yet it would hardly be suggested that such organization thereby became identical with the Walter K. Schmidt Company. The fact that the new company was organized by 4 out of the 24 stockholders of the old company can make no difference in principle. The very purpose of organizing the new company in this case was to get rid of the old company and its stockholders. When the new company took over the assets of the old company it did so purely as a purchaser and not otherwise; and there at once ensued a radical change, not only as to the legal title to the assets, but also as to the equitable title of the stockholders. And the transfer of the lease by the bill of sale was therefore an assignment in the strictest sense.

The condition against assignment in a lease to a partnership was held to have been violated where the

members of the partnership, upon its dissolution, assigned the lease to a corporation which they and others had formed for the purpose of taking over the partnership business and assuming its liabilities. *Emery* v. *Hill*, 67 N. H. 330 (39 Atl. 266). And

"if one firm is dissolved and another one formed, and the lease is assigned to the new partnership by the original one, this has been held a breach of a condition against assignment." Jones on Landlord & Tenant, § 469.

*Second.* As to the claim, made by the defendant, that Mrs. Panting, by signing a certain option, had waived her right to insist upon the condition in the lease against assignment. Before the organization of the new company, that is, in January, 1913, an agreement in writing had been submitted to the complainants by which the old company, "its successors and assigns," were to have the right to a renewal of the lease at their option. This agreement had been signed by Mrs. Panting, but not by Mrs. White. And it is the theory of the defendant that by signing this option, which contained the words "successors and assigns," Mrs. Panting had thereby impliedly consented to an assignment of the lease by the old company.

We do not think that this is so. To operate as a waiver by implication the terms of the option must have been inconsistent with the condition in the lease, and they were not, in fact, inconsistent. The lease did not prohibit an assignment absolutely and at all events, but only when made without the written assent of the lessor. Furthermore, it is usually held that such a condition does not prohibit an assignment by operation of law, unless expressly so stated. Jones on Landlord & Tenant, § 466. And it must necessarily be held that the words "successors and assigns" in the option referred only to such successors and assigns as the complainant should consent to, or as should become such by

operation of law. The same question was before the supreme court of California in *German-American Savings Bank* v. *Gollmer*, 155 Cal. 683 (102 Pac. 932, 24 L. R. A. [N. S.] 1066), where the court said:

"As we have seen, the lease contained a covenant against assignment without the consent of the lessor, with a provision for re-entry in the event of a breach thereof. These provisions were in no way rescinded or affected by the provisions of the supplemental agreements. The provision in the latter agreements that 'this agreement shall inure to and  *  *  *  bind the heirs, executors, administrators, successors and assigns of the several parties' were not effectual to make any change in this regard. Consent of the lessor was still essential to any assignment which would be binding upon the lessor, and there could not be any 'assign' of the lessee in whose favor the provision would operate, except one who had become such by consent of or waiver of the lessor."

We think the circuit judge was in error in holding that the transfer of the lease by the old company was not in violation of the condition against assignment, and the judgment must be reversed.

Judgment is reversed, and a new trial granted.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.

This case having been submitted on briefs, without oral argument, was reassigned after the death of Justice MCALVAY.