### WHEALKATE MINING CO. *v.* MULARI.[1]

1. CONTRACTS — VALIDITY — AGREEMENT TO ABSTAIN FROM PERFORMANCE OF LEGAL ACTS.

It is lawful for parties to contract to abstain from the performance of acts proper and legal in themselves, when those with whom they contract have an interest in their doing so, and such agreement may assume the form of a condition.

2. DEEDS—RESTRICTIONS—SALE OF LIQUORS—VALIDITY.

Where the owners of a townsite placed in all deeds of lots a condition restricting the sale of intoxicating liquors, not for the purpose of prohibiting such sales, but for the purpose of keeping the traffic under control, which purpose was known to purchasers of lots, and in pursuance of its policy granted temporary leases or permissions by virtue of which liquor might be sold on certain lots, the restriction was valid and enforceable, and did not constitute an unlawful restraint of trade.

[1] Rehearing denied September 10, 1908.

Appeal from Chippewa; Steere, J. Submitted April 13, 1908. (Docket No. 55.) Decided May 1, 1908.

Bill by the Whealkate Mining Company against Ollie Mulari and Mattie Dahlman to enjoin the violation of a condition in a deed. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Chadbourne & Rees*, for complainant.

*Burritt & Burritt*, for defendants.

MONTGOMERY, J. The complainant is a mining corporation organized under the laws of the State of Michigan, and is owner of a piece of land which was platted as a townsite prior to 1903. The land was wholly unoccupied, and the company drained the land, built roads and streets, and laid out what is known as the town of South Range, and from time to time sold a large number of lots in the town. It adopted a form of deed which contained a condition and agreement as follows:

"The estate hereby conveyed to the party of the second part is expressly made subject to the following conditions, hereby agreed to by the said party of the second part, for their heirs, executors, administrators and assigns, which conditions and which covenant on the part of party of the second part, shall run with the land and be binding upon any person or persons succeeding to the title of the party of the second part, and for any breach of which conditions, the estate hereby granted and the whole thereof shall be forfeited and absolutely terminated, and the same shall revert to and become the property of the party of the first part, its successors and assigns, to the same extent as if this instrument had not been made, which conditions are as follows, viz.: That the said party of the second part shall not, nor shall their heirs, executors, administrators or assigns, nor any of them, use the said premises or any part thereof, nor suffer the same to be used for any immoral purposes, nor keep for sale nor suffer to be kept for sale, nor sell or suffer to be sold upon said premises or any part thereof, any spirituous, malt or intoxicating liquors,

on pain of defeating the whole estate hereby conveyed and of forfeiture of the same as aforesaid, together with all improvements and structures made or erected or to be made or erected thereon, to the said party of the first part herein, its successors or assigns.

"And the said party of the second part agrees to observe the said conditions and each and every of them, and agrees that said estate may be forfeited as aforesaid for any breach thereof, and further agrees, that in addition to the penalty of forfeiture as above mentioned, the said conditions may be enforced by any appropriate action or by writ of injunction from any court of competent jurisdiction."

On the 15th of December, 1902, complainant conveyed to Nichols and Getchell lot twenty-two (22) of block eleven (11) by a deed containing the above conditions.

On March 11, 1905, Nichols and Getchell conveyed to John Jyhla, Jyhla conveyed to defendant Mullari, on March 14, 1905, by quitclaim deed, and he also gave a subsequent deed in the form of a warranty deed, subject to the rights of the Whealkate Mining Company under the original deed.

The complainants, at the time they platted the town, had no purpose of making it a prohibition town, that is, of excluding absolutely the sale of liquor. But it was thought that if conveyances without restriction were made, they would simply sell a few lots for saloon purposes, and that would end the growth of the town. They therefore determined to keep the control of the liquor traffic within their own hands and adopted the plan of selling no lot except under the conditions and restrictions of the deeds, and to carry this into effect, the directors granted temporary leases or permissions by virtue of which liquor might be sold on certain lots in the townsite. The purpose of the company to grant permission to a limited number of saloons within the district of the townsite was known to Nichols and Getchell at the time the deed in question was made. The defendant, after purchasing the lot in question, proceeded to open a saloon

thereon in violation of the conditions and agreements contained in the deed. A bill was filed for an injunction restraining him from carrying on this business. A forfeiture of the title is not prayed. At the hearing, the bill was dismissed and complainant has appealed.

There is no doubt that it is lawful for parties to contract to abstain from the performance of acts proper and legal in themselves when others with whom they contract may have an interest in their doing so, and as was said in *Smith* v. *Barrie*, 56 Mich. 314, such agreement may assume the form of a condition. See, also, *Watrous* v. *Allen*, 57 Mich. 362, and *Reilly* v. *Otto*, 108 Mich. 330.

It appears to have been the view of the circuit judge that it was incompetent for the parties in this case to make a contract to limit the sale of liquor within the limits of the townsite to those to whom they should grant special permission, as this would be an unlawful restraint of trade, and in the brief of defendant's counsel, language employed by Judge MORSE in *Chippewa Lumber Co.* v. *Tremper*, 75 Mich. 40, is quoted which tends to support the view that it would be incompetent for the owner of a plat to provide for a sale and to convey lots so as to grant or effect a monopoly of the sale of liquor in themselves or other persons, as this would be contrary to public policy. This language must be construed in connection with the facts in the case. In that case, it would appear that the scheme of the owners of the property was to exclude the sale of liquor wholly, and as was said in *Jenks* v. *Pawlowski*, 98 Mich. 110:

"It certainly cannot be said that a grantor has the right afterwards to sell an adjoining lot without restrictions, and thereby diminish the value of his former grantee's property, and impair its eligibility for other uses, converting the locality into a saloon locality, and still be allowed to insist upon the restriction."

That case proceeded upon the view that there was mutuality in such agreements, and that there was, in the absence of any proof to the contrary, an implied under-

taking on the part of the grantor that similar provisions would be inserted in other conveyances to carry out the general scheme of prohibiting the sale of liquor on the premises.

But this is not that case. In this case, the effort was to restrict and not prohibit the sale of liquor, and the question presented is whether it is lawful for the owner of a plat to prohibit, within certain territory, the sale of liquor by others, and in effect, by a condition annexed to the sale of property by himself, provide that others than himself shall not engage in a particular business on the property. We see no reason for holding that such an engagement is unlawful. In *Watrous* v. *Allen*, 57 Mich. 362, it was said of the contention that such a provision is in restraint of trade, that such provision in its application to a parallel case was considered in *Beal* v. *Chase*, 31 Mich. 490, where "it was held that a covenant in restraint of trade, so far as the covenantee had in his own business an interest in enforcing it, might be valid." It was further said:

"There is nothing in the position taken by the defense that the condition tends to the establishment of a monopoly in the business of selling intoxicating drinks, and is thus opposed to public policy. It is not the policy of this State that every one should sell intoxicating drinks who pleases. On the contrary, heavy taxes are levied and onerous conditions imposed by the State for the express purpose of limiting the number of those who shall sell; and the condition in question is directly in the line of that policy, instead of being opposed to it."

In the present case, there was no deceit practiced. The condition was lawful in itself, and the complainant is entitled to the relief prayed.

The decree is reversed and a decree will be entered in this court granting the prayer of the bill, with costs of both courts.

GRANT, C. J., and BLAIR, CARPENTER, and McALVAY, JJ., concurred.