109 P.2d 254

**ALAMOGORDO IMPROVEMENT CO. v. PRENDERGAST et al.**

No. 4574.

Supreme Court of New Mexico.

Nov. 13, 1940.

Rehearing Denied Feb. 1, 1941.

Whatley, Garland & Weir, of Las Cruces, for appellants.

Shipley & Shipley, of Alamogordo, for appellee.

BRICE, Justice.

In a former appeal of this case (Alamogordo Improvement Co. v. Prendergast, 43 N.M. 245, 91 P.2d 428, 122 A.L.R. 1277) we held that the complaint stated a cause of action. The question was whether a reciprocal negative easement, imposed by the plaintiff, Alamogordo Improvement Company, one of the appellees herein, as the common vendor for the benefit of itself and all other purchasers of lots and their assigns, was divested as to the lot in controversy by its sale for taxes, so that the common vendor and owners of other lots within the restricted area were deprived of all right to have such restrictions enforced as against the tax sale purchaser; and we held that such tax sale did not divest that right.

The pleadings have been amended and new issues interposed that will sufficiently appear herein.

From a decree on the merits in favor of plaintiff and interveners, who are grantees (immediate or otherwise) of plaintiff, the defendant (appellant) appeals.

The defendant has attacked certain findings made by the trial court, but in no case has complied with sec. 6 of Rule 15, which is as follows: " * * * A contention that a verdict, judgment or finding of fact is not supported by substantial evidence will not ordinarily be entertained, unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper references to the transcript. Such a statement will be taken as complete unless the opposite party shall call attention in like man-

ner to other evidence bearing upon the proposition."

However, we have examined the record and find that there is substantial evidence to support each of the findings attacked, except, perhaps, Finding No. 16, in which the court stated that liquor had been sold on said lot since 1936, when in truth it had been sold thereon since 1935. However, if we strike this finding it will be to the disadvantage of defendant. Also, certain dates placed in this finding were stipulated by the parties and it does not appear that this was not one of the stipulated dates.

The facts found by the trial court, material to a decision, are substantially as follows:

The plaintiff was incorporated under the laws of the Territory of New Mexico in 1898, and was authorized, among other things, to establish towns and dispose of lots therein, etc. In pursuance of this authority it established the town of Alamogordo, New Mexico, and filed the plat thereof in the office of the probate clerk, as provided by law; and since statehood it has been on file in the office of the county clerk of Otero County as a part of the public records.

As a part of the general plan for the establishment of the townsite of Alamogordo and its subdivision into lots, blocks, parks, streets, and alleys, the plaintiff determined to prohibit the manufacture, sale and other disposition of intoxicating liquors within the platted area of the said town "except by the plaintiff or such persons as it might from time to time designate on block 50 within said platted area;" and in pursuance of said determination, the plaintiff caused to be incorporated in each and every original deed of conveyance given by it, conveying land within the platted area, substantially these words: "Whereas, the first party has among its purposes that of laying out and founding towns, and in pursuance of such object has acquired all of the real estate in the town of Alamogordo, in Otero County, State of New Mexico (Territory of New Mexico in the older deeds) and has laid out and platted the same into lots and blocks for the purpose of sale and improvement; and whereas, it is deemed advantageous to the development of said town, and to the best interests of the inhabitants thereof, to restrict the manufacture, sale or other disposition of intoxicating liquors at all places therein, except by the grantor or such persons as it may from time to time designate, on Block 50 of said town, which policy respecting said sale of intoxicating liquors is approved of and consented to by the second party; Now therefore, the said first party, for and in consideration of the premises and of the approval and consent of the second party to said policy with reference to said manufacture, sale or other disposition of intoxicating liquors and the sum of $——— to it paid by the second party the receipt whereof is hereby acknowledged, and also for the further consideration of an agreement between the parties hereto for themselves, their heirs, successors and legal representatives that intoxicating liquors shall

never be manufactured, sold or otherwise disposed of, as a beverage or medicine, in any place of public resort in or upon the premises hereby granted, or any part thereof, and it is herein and hereby expressly reserved by the said first party that in case any of the above conditions concerning intoxicating liquors are broken by the second party or their heirs, assigns, lessees or legal representatives, thereof, then this deed shall become null and void, and all right, title and interest in and to the premises hereby conveyed shall revert to the first party or its successors; and the said second party by accepting this deed for his heirs, assigns, lessees and legal representatives consents and agrees to the reservations and conditions aforesaid; * * *."

That said plan for restricting the manufacture and sale of intoxicating liquors was intended to and did in fact enhance the value of the lots sold by plaintiff, as well as the lots retained by it in said restricted area. That lot 12 in Block 12 of said town, being the lot involved in this suit, owned by defendant, was originally sold to one J. T. Lewis, and the deed conveying said lot to him contained the provisions and restrictions which have been copied herein. Said deed was duly acknowledged and recorded in the deed records of Otero County, New Mexico, in 1905. The defendant had knowledge at the time he purchased said lot, of plaintiff's plan to restrict the sale of intoxicating liquor in Alamogordo, and knew that said lot was within said restricted district. At the time this suit was instituted the defendant Prendergast was preparing to engage, or permit another to engage, in the business of selling intoxicating liquors on said lot, and since the institution of this suit he has been permitting such sale thereon.

The plaintiff has sold several hundred of the lots thus platted and has retained and now owns approximately seventy thereof. The intent and purpose of plaintiff in imposing the restrictions mentioned was to limit the sale of intoxicating liquors to block 50 of said town, and to develop such restricted area as desirable residence and business property and to further the best interests of the inhabitants thereof. Such plan was for the benefit of the restricted property.

Each of the interveners is an owner of a lot within the restricted district mentioned; and such restriction entered into the considerations for the purchase thereof and has enhanced its value.

The only violations of the restriction mentioned are the following: By one Oleson in 1902, who was immediately enjoined from continuing the violation of such restriction; in 1934, by one Hennessee, who was enjoined in 1935; from January, 1935, by one Kouborlis, who, although frequently threatened with injunction by appellee's attorney, was not actually sought to be enjoined until suit filed after the institution of this suit; and the defendant herein, who violated said restrictions in July, 1938. Counsel later stipulated that proceedings in the Kouborlis suit should be stayed pending outcome of this appeal.

All of the original deeds issued by the plaintiff contained the restriction mentioned, except as to those conveying lots in block 50. Since the adoption of plaintiff's plan mentioned, the town of Alamogordo has grown in population. Owners of land adjacent to the original townsite, and within the corporate limits of said municipality, have platted additions to said town, in some of which a similar plan has been adopted, while in others no such restrictions were adopted. In one of the latter additions, situated immediately south of the original townsite and within a few blocks of the business district of Alamogordo and within its corporate limits, intoxicating liquors are now being sold.

It is asserted by defendant that if the plaintiff and interveners ever had any equitable right to enforce compliance with the restriction mentioned that it had been abandoned by the execution of deeds which contained no restriction.

We are satisfied that the finding of the court to the effect that all original deeds from the plaintiff had incorporated therein the restriction mentioned, and that the quitclaim deeds, special master's deeds, etc., which contained no restrictions, were all issued upon property restricted by original deeds.

It is asserted that the plaintiff and interveners had waived and abandoned their rights to object to the sale of intoxicating liquors upon restricted property by their conduct in acquiescing in such sales upon lots within the restricted district. It ap-

pears from the findings that but four attempts have been made to violate this restriction in over forty years; and that in only one case was court action to enjoin such sale delayed for any appreciable length of time. This was the running of a saloon by one Kouborlis from 1935 until 1939. The trial court refused a requested finding that the plaintiff and interveners had waived the right to enforce the restriction, and this inference from the evidence we think was reasonable.

Whether the plaintiffs, interveners, and other interested property owners waived these rights was for the trial court to decide. Surely the rights were not waived in the absence of an intent to waive them. Star Brewery Co. v. Primas, 163 Ill. 652, 45 N.E. 145. The fact that they permitted a saloon to operate on restricted property without court action against the owner for a number of years was strong evidence of acquiescence, but not conclusive.

There is nothing in Wedum-Aldahl Co. v. Miller, 18 Cal.App.2d 745, 64 P.2d 762, and Brown v. Wrightman, 5 Cal.App. 391, 90 P. 467, that is in conflict herewith. The case of Jenks v. Pawlowski, 98 Mich. 110, 56 N.W. 1105, 22 L.R.A. 863, 39 Am.St.Rep. 522, is decided upon a different state of facts. The case is limited in Whealkate Mining Co. v. Mulari, 152 Mich. 607, 116 N.W. 360, 18 L.R.A.,N.S., 147; Reilly v. Otto, 108 Mich. 330, 66 N.W. 228, and Frink v. Hughes, 133 Mich. 63, 94 N.W. 601, 603. In the latter case it was held that there was no waiver of restrictions unless the general

scheme had been departed from, notwithstanding some land had been conveyed free from the restriction. Regarding the Jenks case and another, the court said, "In both these cases not only had there been a subsequent grant without restriction, but the grantees had engaged in the sale of intoxicating liquors, so that the purpose of excluding that business from the community was frustrated." That is not the case here. We think there has been a consistent endeavor on the part of the interested property owners to protect their rights as evidenced by the restrictions in the original deeds.

The trial court refused defendant's tender of findings to the effect that these rights were waived; and this holding is supported by substantial evidence. Kouborlis had been notified a number of times to desist from running a saloon on the restricted property, and the plaintiff had brought this and other suits in an endeavor to enforce the restriction. We are satisfied, in view of all the circumstances, that the plaintiff and interveners never intended to waive these rights or acquiesce in the sale of liquor on the restricted property, and the Kouborlis incident did not conclusively establish such intention, or that such rights were waived. Ward v. Prospect Manor Corp., 188 Wis. 534, 206 N.W. 856, 46 A.L.R. 364, and annotation beginning at p. 372; Voorheis v. Powell, 261 Mich. 378, 246 N.W. 154, 85 A.L.R. 932, and annotation beginning at page 936.

It is asserted that "changed conditions now existing in the town of Alamogordo make it inequitable to enforce the alleged scheme or plan prohibiting the sale of intoxicating liquors on all lots except those in block 50." These changed conditions as found by the trial court are: "* * * the town grew in population and other owners of lands adjacent to the original townsite of Alamogordo and within the corporate limits of the municipality, platted and made other additions to the town of Alamogordo. Some of these additions had the same restrictive clause against the sale of intoxicating liquors as the townsite company, while some of the latter additions did not have restrictions against such sale and in one of said additions in which the sale of intoxicating liquors was not prohibited, immediately south of the original townsite, but within a few blocks of the business district of Alamogordo and within the corporate limits, intoxicating liquors are now being sold."

It, no doubt, was contemplated by the parties to the original deeds that the town would "grow in population," as the evidence indicates it was open prairie and uninhabited at the time it was platted. The inevitable result of the town's growth was the platting of new additions. As the plaintiff could not own all adjacent property, however extensive its holdings might be, it must necessarily have been in contemplation of the parties that there might be adjoining property without restriction. There is noth-

ing in the evidence to indicate that plaintiff's plans have been substantially changed by the one saloon on property immediately south of the restricted district. If such fact alone was sufficient to make it inequitable to enforce the rights of plaintiff and interveners, then all such plans are necessarily failures from the start.

Change of conditions, to warrant the court in refusing equitable relief, must be of such importance as to amount to a defeat of the purpose of the restraint (Starkey v. Gardner, 194 N.C. 74, 138 S.E. 408, 54 A.L.R. 806, and annotation at p. 812; Humphreys v. Ibach, 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980, and annotation at p. 985; Barton v. Moline Properties, 121 Fla. 683, 164 So. 551, 103 A.L.R. 725, and annotation at p. 734); and we agree with the trial court that the conditions have not so changed; or indeed changed in any material degree.

Defendant requested a finding to the effect that the purpose of plaintiff in trying to enforce the restrictive covenant and enjoin the sale of intoxicating liquors in this action was not for the moral benefit of the inhabitants of Alamogordo, or to promote temperance, or to control the use of intoxicating liquors; but is to create a monopoly or perpetuity in itself, its successors, lessees, and assigns, in the sale of intoxicating liquors within the original townsite of Alamogordo.

The trial court refused to so find, but did find, "The intent and purpose of the plaintiff in imposing, as a part of its general plan, a restriction on the manufacture, sale or other disposition of intoxicating liquors at places of public resort, except on Block 50, of the platted area set out in Plaintiff's Exhibit One, was and is to develop the said platted area as a desirable residence and business town, and to further the best interests of the inhabitants."

And that such covenant was for the benefit of all lots sold or intended to be sold within said platted area.

Article 4 of Sec. 38 of the New Mexico Constitution is, "The legislature shall enact laws to prevent trusts, monopolies and combinations in restraint of trade." Pursuant thereto, the legislature enacted the following, "Perpetuities and monopolies are contrary to the genius of a free government and shall never be allowed." Sec. 117-114, N.M.Sts.1929. And "Every person who, shall monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce of this state, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished," etc. Sec. 35-2902, N.M.Sts.1929.

The original plan, the court found, was intended for the benefit of the purchasers of lots, and the question of whether there was any intention on the part of the plaintiff to secure a monopoly for the sale of intoxicating liquors in Alamogordo was not before the court; but the question presented is whether "the purpose and intent of plaintiff in trying to enforce said restrictive

clause and enjoin the sale of intoxicating liquors, except upon block 50, is to create a monopoly."

This request for a finding the court refused.

In support of this assignment of error there is a total failure to comply with sec. 6 of Rule 15, supra. Defendant has copied one question and answer from the testimony in support of it, and as to the answer, plaintiff contends that it was inadvertently made, and we think, from an examination of the testimony, that it was. Certainly, it is not enough evidence to establish the fact that this action was brought for the purpose of securing a monopoly in favor of plaintiff, who it is not shown, operates a place where liquor is sold, or is interested in such place.

The restricting of the sale, or other disposition, of intoxicating liquors to block 50 of said town, and then only by the plaintiff "or such other persons as it may, from time to time, designate" could undoubtedly establish a monopoly for the sale of intoxicating liquors in the plaintiff, if that was its intention in devising the plan followed. But the trial court refused to find the existence of such intent.

The appellant cites Chippewa Lbr. Co. v. Tremper, 75 Mich. 36, 42 N.W. 532, 4 L.R. A. 373, 13 Am.St.Rep. 420, in which it was held that the court would not enforce a reverter where the purpose of the agreement was to create a monopoly. This case was explained in Whealkate Min. Co. v. Mulari, supra, the syllabus of which reads, "The owner of a town site may, in the sale of lots,

insert covenants in the deeds by which the right to sell intoxicating liquors therein is restricted to himself or his licensees." The court stated: "* * * It appears to have been the view of the circuit judge that it was incompetent for the parties in this case to make a contract to limit the sale of liquor within the limits of the townsite to those to whom they should grant special permission, as this would be an unlawful restraint of trade, and, in the brief of defendant's counsel, language employed by Judge Morse in Chippewa Lbr. Co. v. Tremper, 75 Mich. [36], 40, 42 N.W. 532, 4 L.R.A. 373, 13 Am.St.Rep. 420, is quoted, which tends to support the view that it would be incompetent for the owner of a plat to provide for a sale and to convey lots so as to grant or effect a monopoly of the sale of liquor in themselves or other persons, as this would be contrary to public policy. This language must be construed in connection with the facts in the case. In that case, it would appear that the scheme of the owners of the property was to exclude the sale of liquor wholly, and, as was said in Jenks v. Pawlowski, 98 Mich. 110, 56 N.W. 1105, 22 L.R. A. 863, 39 Am.St.Rep. 522: 'It certainly cannot be said that a grantor has the right afterwards to sell an adjoining lot without restrictions, and thereby diminish the value of his former grantee's property, and impair its eligibility for other uses, converting the locality into a saloon locality, and still be allowed to insist upon the restriction.' That case proceeded upon the view that there was mutuality in such agreements, and that there was, in the absence of any proof to

the contrary, an implied undertaking on the part of the grantor that similar provisions would be inserted in other conveyances to carry out the general scheme of prohibiting the sale of liquor on the premises. But this is not that case. In this case, the effort was to restrict, and not prohibit, the sale of liquor, and the question presented is whether it is lawful for the owner of a plat to prohibit, within certain territory, the sale of liquor by others, and in effect, by a condition annexed to the sale of property by himself, provide that others than himself shall not engage in a particular business on·the property. We see no reason for holding that such an engagement is unlawful. In Watrous v. Allen [supra], 57 Mich. 362, 24 N. W. 104, 58 Am.Rep. 363, it was said of the contention, that such a provision is in restraint of trade, that such provision in its application to a parallel case was considered in Beal v. Chase, 31 Mich. 490, where, 'it was held that a covenant in restraint of trade, so far as the convenantee had in his own business an interest in enforcing it, might be valid.' ·It was further said: 'There is nothing in the position taken by the defense that the condition tends to the establishment of a monopoly in the business of selling intoxicating drinks, and is thus opposed to public policy. It is not the policy of this state that every one should sell intoxicating drinks who pleases. On the contrary, heavy taxes are levied and onerous conditions imposed by the state for the express purpose of limiting the number of those who shall sell, and the condition in question is direct-

ly in the line of that policy, instead of being opposed to it.' "

Appellant also cites Burdell v. Grandi, 152 Cal. 376, 92 P. 1022, 1024, 14 L.R.A., N.S., 909, 125 Am.St.Rep. 61, in which it is held that it was the intent and purpose of the grantor in inserting the restriction in the conveyance to reserve to himself a monopoly for the sale of liquor. The court stated: "* * * if the plaintiff, under a general scheme for establishing such town, had contemplated and intended that the sale of intoxicating liquors should be confined and restricted to some given locality or territory within the town, and restricted it ̇ to such given locality by imposing conditions against its sale elsewhere, we are not prepared to say that such a scheme would not be entirely proper, and conditions in deeds harmonizing therewith lawful and enforceable. But nothing of this kind appears to have been intended or designed by the plaintiff, according to the findings. * * * His purpose was, so the court finds, and we must assume it has so found on sufficient evidence, that he intended, by the imposition of such conditions, to reserve and create solely in himself a monopoly of the sale of intoxicating liquors within the town of Point Reyes Station. The court not only finds that this was the intent of the plaintiff, but that, in effect, he, through his agents, was in the actual enjoyment of a monopoly as to such business."

Fusha v. Dacono Town Site Co., 60 Colo. 315, 153 P. 226, 227, Ann.Cas.1917C, 108, is quite similar to this case. A company plat-

ted a town for the purpose of selling lots, with a plan similar to that of plaintiff. In a suit to enforce a forfeiture the court said: "* * * As a part of this transaction, and to effectuate the plan and scheme of the plaintiff corporation to restrict and limit the traffic in intoxicating liquors in the village, it further agreed to convey the two lots aforesaid in fee simple to the brewing company, and to insert, in all other deeds whereby it conveyed lots in such townsite, a condition that intoxicating liquors should never, except by druggists for medicinal purposes, be sold on the premises, and upon violation of the condition by the grantee in any such deed or his heirs, executors; administrators, or assigns, the title to the lots so conveyed should revert and reinvest in the townsite company. The plaintiff had no purpose or intention of excluding absolutely the sale of intoxicating liquors in the village, but only to restrict the same. It conveyed in fee simple the aforesaid lots to the brewing company before selling any other lots, and inserted in all subsequent conveyances the said prohibition clause and condition of forfeiture, all of which was known to the defendants and to those under whom they claim, at the time their respective interests in the premises were acquired. The business of selling intoxicating liquor at retail has never been 'of common right' in this state, nor has it been a 'lawful trade,' except under such authority as was specially conferred by the sovereignty. Indeed, in the sale thereof it has always been recognized that the interests of society require strict regulation, which may extend to ab-

solute prohibition. It may therefore be doubtful whether contracts restricting the sale of intoxicating liquors in a town should ever be considered against public policy, unless so specifically declared by legislation. Sell v. Branen, 70 Ill.App. 471, 473. However, be that as it may, we are satisfied that the contract with the brewing company and the deed here involved, together with the acts of the parties in the premises, were not intended to, and did not, prevent competition in its broad and general sense, or in any wise control prices to the detriment of the public."

There is no inherent right in a citizen to sell intoxicating liquors. Crowley v. Christensen, 137 U.S. 86, 91, 11 S.Ct. 13, 34 L.Ed. 620, 623. Such business, it is recognized, is attendant with danger to the community and is subject to regulation, or prohibition. The number of saloons may be limited in municipalities and restricted to certain locations. People ex rel. Fitzgerald v. Harrison, 256 Ill. 102, 99 N.E. 903, Ann. Cas. 1913E, 362 and annotation.

Where the public health, peace or morals call for the regulation or prohibition of any business, it may become a superior public policy of the state to so regulate it, though it does create a monopoly. State of South Carolina v. Aiken, 42 S.C. 222, 20 S. E. 221, 26 L.R.A. 345.

"* * * However partial it may seem, the state can create a monopoly of any business that may lawfully be prohibited by it on the grounds of public policy, without violating any constitutional inhibition, because

no person possesses an inherent right to engage in any employment, the pursuit of which is necessarily detrimental to the public." White v. Holman, 44 Or. 180, 74 P. 933, 936, 1 Ann.Cas. 843.

"Statutes which purport to confer on individuals or corporations exclusive rights and privileges as to the making or vending of ordinary and harmless articles of commerce are clearly invalid, unless capable of justification on some one of the grounds heretofore mentioned. With the supply of articles that may be furnished by individual effort the government has no such concern that it can grant an exclusive right to engage in their manufacture and sale. * * * And the state may grant exclusive right to deal in certain articles not of common right, or which come within the proper scope of police regulation, * * *. The state may also grant sole and exclusive privileges as to the establishment of lotteries and sale of lottery tickets, or for the sale of intoxicating liquors, without violating the state or federal constitution." 19 R.C.L., Monopolies and Combinations, Sec. 13.

There is no public policy that would prevent such restriction of the sale of intoxicating liquors as adopted by plaintiff in its plan to restrict the places of sale to one block of the townsite, in view of the fact that the plan was devised in the interest of the public; notwithstanding that as an incident thereto it was possible for the plaintiff to monopolize the traffic in intoxicating liquors in the townsite. Burdell v. Grandi,

supra; Whealkate Mining Co. v. Mulari, supra; Fusha v. Dacono Town Site Co., supra; Reilly v. Otto, supra; Frink v. Hughes, supra.

It would seem to be inconsistent on the part of defendant to assert that there was a monopoly, after claiming that the plan had failed because other saloons could be, and had been in operation on unrestricted additions to the town.

The decree of the trial court should be affirmed, and it is so ordered.

BICKLEY, C. J., and ZINN, SADLER, and MABRY, JJ., concur.