357 P.2d 677

**H. J. GRIFFITH REALTY CO.,**
Plaintiff-Appellant,

v.

HOBBS HOUSES, INC., Defendant-
Appellee.

No. 6643.

Supreme Court of New Mexico.

Dec. 9, 1960.

Rose & Johnson, Hobbs, Hoskins, King, Springer & McGannon, Kansas City, Mo., for appellant.

Neal & Neal, Girand & Stout, Hobbs, for appellee.

CARMODY, Justice.

Plaintiff appeals from the refusal of the trial court to set aside a restrictive covenant contained in a deed to property of the plaintiff. Plaintiff also complains of the failure of the trial court to make a declaration as to the meaning and legal effect of the restriction, if found to be valid.

The real controversy in the case has to do with the construction and effect of a provisional condition contained in the deed from the defendant to the plaintiff's predecessor in title.

The property involved, consisting of 14.21 acres within the city of Hobbs, was purchased from the defendant on July 9, 1948. Prior to the purchase, the representatives of the plaintiff were shown a master plan for the development of an entire section of land. At this time, only a portion of the land had been dedicated, but the master plan showed the manner in which the defendant planned to subdivide the section. According to the master plat, the land which plaintiff now owns was included within the area of the property which was to be divided into blocks, and was to be used for residential purposes. The plat also included locations for industrial sites, a shopping center and a school. The property was sold to the plaintiff to be used for exhibiting motion pictures, but it was thoroughly understood at the time that should the property be permanently abandoned as a theatre site, that then and in that event plaintiff would be required to subdivide and use the property only for residential building sites.

Prior to the actual conveyance, the defendant had dedicated a part of the section under the term "Unit I of Broadmoor Addition," and this unit was burdened with specific restrictive covenants in order to guarantee that all the property in the unit would be used purely for residential purposes. This particular unit of the section

was a considerable distance from the property of the plaintiff and not contiguous thereto. After the deed was issued to the plaintiff, the defendant dedicated additional units, being numbers two through seven of the Broadmoor Addition, which were likewise restricted. However, these additional units still did not bring the dedicated part of the defendant's land to that now owned by the plaintiff, and at the time of trial the defendant still owned a relatively large tract, immediately adjacent to that of the plaintiff's, which had not been dedicated and restricted.

After the sale to the plaintiff, the defendant has continuously followed the master plan for the development of the real estate, with perhaps three exceptions in the proposed residential area. Approximately a year after the plaintiff's purchase, the defendant deeded to the Veterans of Foreign Wars, as a gift, a piece of property immediately adjoining that of plaintiff, and there has been erected upon it a club house. In 1953, by gift the defendant deeded to the Women's Civic Club of Hobbs a piece of property next to that of the Veterans of Foreign Wars, and there was constructed upon it a club building. More recently, the defendant has also sold to the board of education a portion of the property, for the building of a school. These deeds contained similar restrictive provisions to that contained in the deed to the plaintiff that the property shall have residence restrictions placed thereon if it ceases to be utilized for the purpose for which it was originally conveyed.

The actual provision as set forth in the deed from the defendant to the plaintiff, and over which this entire controversy arises, is as follows:

"It is understood and agreed that this property is sold for use as a theatre site, and in the event grantee, its successors or assigns, should permanently cease to use the premises for such purpose or should it use the same, or any part thereof, for any purpose other than a theatre site, then in either of such events, the restrictive covenants identical to those now existing in Broadmoor Addition, Unit I to the City of Hobbs shall immediately be imposed upon and maintained upon the land. A breach of this covenant shall be grounds for the cancellation of this deed by the grantor, its successors and assigns against the grantee, its successors and assigns."

Summarizing the restrictive covenants of Unit I, Broadmoor Addition: They are to remain effective until January 1, 1967, and thereafter to be automatically extended for successive 10-year periods unless changed by majority vote of the then owners; the remedy for violation is by injunction or for damages by any owner of property in the subdivision. The restrictions themselves re-

late principally to the size, minimum cost, type, location, and use of the building lots, and there is no contention that they are unenforceable.

In this appeal, plaintiff relies upon six points for reversal, but they are so interrelated that they will be discussed together. Primarily, plaintiff urges that the covenant in the deed should be declared invalid because it is conflicting, vague, susceptible of many different interpretations, and substantially lacking in clarity, and that it is unreasonable, under the circumstances of this case, and invalid as contrary to public policy.

■ The problems arising from the imposition of restrictive covenants or conditions subsequent are such that the courts are continuously called upon to determine them. The courts and text writers frequently comment on the wide divergence of opinion and attempt to compare and construe conflicting results. However, in this field of law, perhaps more than any other, each case must depend upon its own particular facts, and an attempt to apply specialized rules is singularly unsatisfactory. So it is in the instant case, and we will not attempt, any more than is absolutely necessary, to discuss or distinguish the multitude of cases bearing on the general subject. It is of interest that the peculiar facts of this case are apparently such that counsel could not cite and the court has not found any others

that are factually similar. This is because the covenant in the deed requires contingent affirmative action of the grantee as distinguished from mere compliance.

In this state, we do have certain guiding decisions which are helpful in a general way. In Berger v. Santa Fe College, 1923, 28 N.M. 545, 215 P. 825, 826, we said:

"It may be said that conditions which, if enforced, work a forfeiture of the estate are not favored in the law, and are to be construed strictly and most strongly against the grantor * * *. But, where the language is plain, the condition will ordinarily be enforced * * *. The intention of the parties, as gleaned from the language used, and the circumstances surrounding the transaction, will ordinarily be the controlling consideration in the interpretation of the condition of the deed * *."

In Rowe v. May, 1940, 44 N.M. 264, 101 P.2d 391, we approved the above language and refused to set aside restrictions even though a reversion clause was contained therein. In Hoover v. Waggoman, 1948, 52 N.M. 371, 199 P.2d 991, 995, we stated that effect is to be given the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction and the object of the parties in making the restrictions. Also, in the Hoover case we quoted at some length from Laughlin v.

Wagner, 1922, 146 Tenn. 647, 244 S.W. 475, a part of which is as follows:

"In the construction of these restrictive clauses it is, of course, the duty of the court to give them a fair and reasonable interpretation, taking into consideration the position and situation of the parties to ascertain and determine the true meaning of the language used. But where the clause is susceptible of two different constructions, one favorable and the other unfavorable to the free use of the property, that construction should be adopted which assures its free use. *A literal interpretation which would amount to a mere evasion of the real intention of the parties is not justified, but, if the clause may be given a reasonable interpretation in favor of the free use of the property, it should be done \* \*."* Emphasis added.

With respect to the allied question as to change of conditions, we have held the change must be of such importance as to amount to a defeat of the purpose of the restraint. Alamogordo Improvement Co. v. Prendergast, 1941, 45 N.M. 40, 109 P.2d 254. Compare, Chuba v. Glasgow, 1956, 61 N.M. 302, 299 P.2d 774.

 With reference to the instant case and the assertion that the language in the deed is ambiguous or uncertain, the trial court found specifically to the contrary, and in this we agree. Actually, the language used is remarkably clear and we feel subject to only one construction. The intention of the parties was that the property was to be used for residential purposes when it ceased to be used as a theatre; this is obvious from the language used, when considered with the circumstances surrounding the transaction and the object of the parties in so providing. Hoover v. Waggoman, supra, and Rowe v. May, supra. Much is made by the plaintiff of the fact that the last sentence of the deed covenant mentions cancellation. However, as we read it, this sentence merely provides a possible remedy only in case plaintiff fails to impose and maintain the restrictions in event of cessation of use of the property as a theatre. The argument that this provision makes the title questionable falls of its own weight, if the plaintiff abides by its agreement.

 Plaintiff specifically attacks the word "identical" as contained in the covenant, and points out various questions that would be raised if the same restrictive covenant instrument were to be utilized in the event that the plaintiff subdivided and adopted the restrictions, plaintiff arguing that this construction must be adopted because all restrictive covenants must be strictly construed. What language there is in the deed covenant that would require the adoption of the actual Unit I restriction instrument, we cannot find. Plaintiff apparently

loses sight of the fact that the covenants of Unit I are of a general type, such as could be used and applied to almost any particular piece of property. This is all that the deed covenant directs, and to adopt the plaintiff's view would be a particularly strained construction. Covenants must be considered reasonably, even though strictly, but certainly not on an illogical or patently absurd basis. Hoover v. Waggoman, supra; Sprouse v. Winston, 1948, 212 S.C. 176, 46 S.E. 2d 874; and Mrsa v. Reynolds, 1947, 317 Mich. 632, 27 N.W.2d 40. To us, "identical," in the sense used in the covenant, means "equal."

A great deal of plaintiff's argument is conjectural and contingent. It is apparent from the testimony that the theatre property is being operated at a loss, and it is for this apparent reason, although there may be others that do not make themselves known, that the plaintiff seeks to be relieved of the restriction. It should be noted that the property is still being used as a theatre, and therefore the problems are prospective and have not actually arisen in a legal sense. Were this not a suit for declaratory judgment, it is quite obvious that the court would have no jurisdiction, because of the lack of a legitimate controversy. However, this question was raised in the lower court and resolved against the defendant and is not presented here. Nevertheless, assuming good faith on the part of the plaintiff and the desire on its part to fulfill its contract, if it were to cease to use the property as a theatre and were to impose equal restrictions thereon as in Unit I, and maintain the restrictions until January 1, 1967, then the grounds for cancellation as provided in the deed would no longer exist and plaintiff would have fulfilled its agreement. On the contrary, however, failure or refusal on the part of the plaintiff to carry out in good faith the plain understanding of the parties would certainly justify some affirmative action on the part of the defendant. It would be adding conjecture to conjecture to attempt to foretell what rights or remedies may exist in 1967, whether the land remains in single or multiple ownership. This is particularly true because the plaintiff alone must decide whether or not to continue to use the property as a theatre site.

A considerable portion of the plaintiff's proof related to the amount of income received from the property and to show its operational loss in recent years. Plaintiff had leased the property in 1949 for a period of ten years, and the continued lessening of its income showed that the property was apparently no longer usable as a theatre site. This evidence, together with proof as to the changes in the neighborhood, plaintiff contends, was sufficient to warrant the court in voiding the restrictive covenants. It was shown at the trial that the Veterans of Foreign Wars' club house was at times used for entertainment purposes, and that activi-

ties were carried on therein including occasional public dances and wrestling matches, in addition to the existence of a bar for the benefit of the members. It was also shown that the Women's Civic Club sponsored certain activities, such as conventions and other matters of community interest. The plaintiff asserts that these activities lessened the value of the property for residential purposes, thereby bolstering the contention that the property would be of more value if it had no restriction thereon.

In this connection, the plaintiff offered proof that the property would have a greater value for commercial purposes as distinguished from residential purposes.

The trial court refused the offer of testimony on the basis that comparative values, in the sense used, were not material as to the determination of whether the restrictions should be voided. It should also be pointed out that there was testimony in the record that the presence of the Veterans of Foreign Wars' club did not reduce the value of the property for residential purposes, and that the Women's Civic Club was a valuable asset to the community. The question is not the comparative value for one purpose or another, and the mere fact that plaintiff's property might be of more value were the restrictions removed will not justify their removal. See Harris v. Pease, 1949, 135 Conn. 535, 66 A.2d 590, 592, 10 A.L.R.2d 819, where it was stated:

"The fact that the plaintiff's property would be of more value if the restriction were removed is of no consequence * * *. The plaintiff purchased the land with full knowledge that the eight-acre tract was subject to the restriction; he got everything he bargained for, and presumably took the restriction into consideration when he agreed on the price he paid: 'He was under no compulsion to make the purchase, and, if the ownership of this * * * ground seemed sufficiently desirable to induce him to agree to the terms demanded and to accept a deed containing the restriction, it is neither unjust nor inequitable that he be required to observe its limitations.' * *."

See, also, Texas Co. v. Harker, 1957, 212 Md. 188, 129 A.2d 384; Continental Oil Co. v. Fennemore, 1931, 38 Ariz. 277, 299 P. 132; Parrish v. Newbury, Ky.1955, 279 S.W.2d 229; Cowherd Development Co. v. Littick, 1951, 361 Mo. 1001, 238 S.W.2d 346; and Booker v. Old Dominion Land Co., 1948, 188 Va. 143, 49 S.E.2d 314.

Plaintiff's expert witness was not asked if the presence of the Veterans of Foreign Wars' club reduced the value of the property for residential purposes. Such a question would have been proper, and testimony as to this, favorable to the defendant, was received from other witnesses, including two of the original incorporators of the defendant company.

■ The plaintiff requested a finding of the trial court that the property no longer has value as a theatre site, and contends that the refusal of the court to adopt such a finding is error. Such a finding would not have been improper, but the failure of the trial court to adopt the same has in nowise prejudiced the plaintiff, because the deed covenant relates to the use of the property, not whether it is operated at a financial gain or loss.

■■ Certain other findings of the court were objected to by the plaintiff as being not necessary for decision. However, the finding of the court that there has been no radical departure from the original plan of the defendant so as to frustrate the same is supported by substantial evidence, and although some of the other findings may not be ultimate facts, plaintiff was not prejudiced by them. In this connection, see Hayes v. Gibbs, 1946, 110 Utah 54, 169 P.2d 781, 168 A.L.R. 513, wherein the Supreme Court of Utah held that the fact that there was a failure to include restrictive covenants in some of the deeds did not negative the general plan for development of a subdivision.

The intent of the original grantors is the determining factor, and although the fact that the deeds to the Veterans of Foreign Wars and the Women's Civic Club of Hobbs do not contain restrictive covenants at this time may be evidence to the contrary, it is not conclusive of any radical departure from the original plan.

The material findings of fact made by the trial court are amply supported by substantial evidence, and although in conflict with those requested by plaintiff, will not be disturbed on appeal.

Our disposition of the case answers most of the questions propounded by the plaintiff, and the remainder are so speculative and dependent on plaintiff's own action that we do not feel any recognition should be given them.

The judgment will be affirmed, and it is so ordered.

MOISE and CHAVEZ, JJ., and McCULLOH, D. J., concur.

COMPTON, C. J., not participating.