759 P.2d 201

Wallace G. SHARTS, Stakeout Properties, Inc., a New Mexico Corporation, William Huggett, William Huggett Employee Profit–Sharing Trust, and Mrs. R.G. Ellis, Plaintiffs–Appellants, Cross–Appellees,

John Sharts, Dr. Dan Salter, and Banquest/First State Bank, a New Mexico Banking Corporation, Plaintiffs–Cross–Appellees,

v.

Alice M. WALTERS, Marlene Pene, David L. Bates, Karen Bates, Melvyn Weiner, Pamela Cooke, Thomas Ladig, and Janet T. Buchanan, Defendants–Appellees, Cross–Appellants,

and

New Mexico Federal Savings & Loan Association, Defendant.

No. 9662.

Court of Appeals of New Mexico.

June 14, 1988.

Daniel Robert Marlowe, Taos, for plaintiffs-appellants, cross-appellees.

James B. Grant, Santa Fe, for defendants-appellees, cross-appellants.

## OPINION

BIVINS, Judge.

Plaintiffs appeal and defendants cross-appeal from a declaratory judgment entered September 22, 1986. Plaintiffs raise two issues: (1) sufficiency of the evidence to support the trial court's ruling that a tract of land (Tract A) was subject to certain restrictive covenants; and (2) denial of a fair trial due to trial court bias. Defendants' cross-appeal challenges two findings of fact and two conclusions of law to the effect that a portion of Tract A and another tract of land (Tract B) were exempt from the covenants.

We consider plaintiffs' first issue and defendants' cross-appeal issues together and plaintiffs' second issue separately and summarily. We affirm the trial court.

FACTS

Wallace Sharts, one of the plaintiffs, was the common owner of two contiguous tracts of land in Taos County: Tract A (containing 60 acres) and Tract B (containing 15.044 acres and located to the south of Tract A). During 1978, Sharts conveyed the northern 30 acres of Tract A (Tract A–N) to some of the defendants here and to the grantors of the other defendants. Most of the deeds to the land conveyed in Tract A–N specifically incorporated by reference a Declaration of Restrictive Covenants (declaration) that was filed in 1978. Among other restrictions, the declaration restricted the land to single family residences on lots no smaller than 3 acres in size.

During the next few years, Sharts attempted to develop the retained land in the southern portion of Tract A (Tract A–S) contrary to the restrictive covenants contained in the declaration. Thereafter, Sharts conveyed the remainder of Tract A and Tract B to most of the other plaintiffs. None of the deeds to these conveyances contained any reference to the declaration, however, the title insurance policies for all of these later conveyances contained exceptions for the effect of the declaration.

After an attempt to modify the covenants, Sharts and other plaintiffs sought by declaratory judgment to have Tract A–S and Tract B declared not bound by the declaration. The trial court ruled that all

of Tract A, except a 2-acre lot in Tract A-S upon which the Stakeout Restaurant (restaurant) was located, was subject to the declaration. The trial court also ruled that Tract B was not subject to the declaration. Plaintiffs appeal the trial court's ruling that Tract A-S is bound by the declaration. Defendants cross-appeal the trial court's ruling that the restaurant's 2-acre lot and Tract B were not subject to the declaration.

## I. *Plaintiffs' First Issue and Defendants' Cross-Appeal Issues*

The existence of express restrictions on the use of land as contained in the declaration filed by plaintiff Sharts is undisputed. At issue here is whether the restrictions are applicable to land retained by Sharts, specifically Tract A-S and Tract B, that was subsequently conveyed to plaintiffs by deeds that did not contain any reference to the restrictions.

The declaration includes the following language:

### DECLARATION OF RESTRICTIVE COVENANTS RUNNING WITH THE LAND

WALLACE G. SHARTS, the owner of real property situated in Taos County, hereby declares the following restrictive covenants to run with land which may be hereinafter conveyed by WALLACE G. SHARTS, his heirs and assigns:

1. No parcel subject to this Declaration will be smaller than three (3) acres, and no parcel will be divided into smaller parcels nor any portion of any parcel conveyed so as to create a parcel less than three (3) acres.

. . . .

5. The property shall be used for single family residence only, with such structures as are customarily incidental to single family dwellings. No business or commercial activities shall be conducted upon the property or any parcels therein.

. . . .

16. The Grantor, or any Grantee purchasing a portion of the property may proceed at law or in equity to prevent the occurrence, continuation or violation of any of the restrictions.

. . . .

19. Any grantee of a warranty deed or any contract purchaser acquiring an interest in a parcel within the properties shall, upon acceptance of the deed or execution of the contract, become bound by the restrictions contained herein . . . and shall keep, observe, and comply with the restrictions contained herein for all time.

■ New Mexico follows the general rule that where an owner of a tract subdivides and sells under a general plan of restrictions, the restrictions may be enforced by one grantee against another. *Suttle v. Bailey*, 68 N.M. 283, 361 P.2d 325 (1961). In this case, the trial court applied the doctrine of implied reciprocal negative servitudes, also referred to as implied restrictive covenants or equitable servitudes. *See Rowe v. May*, 44 N.M. 264, 101 P.2d 391 (1940). Under this doctrine, when a common grantor develops land for sale in lots, pursues a course of conduct that indicates an intention to follow a general plan of development and imposes substantially uniform restrictions, conditions, and covenants concerning the use of the property in the conveyance of numerous lots, thereby benefitting the retained land, a grantee can enforce similar restrictions against the part of the land retained by the grantor or against any lot subsequently sold without the restrictions to a purchaser with actual or constructive notice of them. *See Mackinder v. OSCA Dev. Co.*, 151 Cal.App.3d 728, 198 Cal.Rptr. 864 (1984); *Rieger v. Wessel*, 319 S.W.2d 855 (Ky.1958); *Mid-State Equip. Co. v. Bell*, 217 Va. 133, 225 S.E.2d 877 (1976); 20 Am.Jur.2d *Covenants, Conditions, and Restrictions*, § 173 (1965).

■ Under the doctrine of implied reciprocal negative easements, the land retained by the common grantor is viewed as restricted by the same conditions imposed on the land conveyed. *Rieger v. Wessel.* The law imposes these restrictions upon the land retained by the common grantor upon the recording of the first deed which effectively imposes restrictions on land con-

veyed. *Mackinder v. OSCA Dev. Co.* While recorded declarations of restrictions should be incorporated by reference in each deed, all subsequent grantees of parcels of the retained land, who take with notice of the restrictions, are bound by the restrictions notwithstanding that similar restrictive clauses have been omitted from their deeds. *Id.*

A general plan of development can be established by: express covenant; implication from filed maps; parol representations made in sales brochures, maps and advertisements; and oral statements upon which purchasers rely. *Lehmann v. Wallace,* 510 S.W.2d 675 (Tex.Civ.App.1974); 20 Am. Jur.2d, *supra,* § 175; *see also Ute Park Summer Homes Ass'n, Inc. v. Maxwell Land Grant Co.,* 83 N.M. 558, 494 P.2d 971 (1972). One of the most complete ways to establish a general plan of development is by reciprocal covenant, whereby the grantor covenants to insert like covenants in all deeds out of the common development property. *Lehmann v. Wallace;* 20 Am. Jur.2d, *supra,* § 175.

▆▆▆ Thus, where the owner of a tract subdivides and sells under a general plan of restriction, it may be shown from the terms of the instrument, as well as from the situation and surrounding circumstances, that the grantor intended to impose reciprocal restrictions. We conclude that the same evidence is relevant to determine which parcels of land are affected by the restrictions. *Cf. Rowe v. May* (purpose of grantor to make restriction reciprocal may be inferred from circumstance that a plan had been devised and declared, publicly announced, or made known to a private buyer). In this case, we believe the trial court found that Sharts impliedly covenanted to insert like restrictions in all deeds out of the common development property and that the common development property consisted of less than all the property Sharts then owned. The relevant evidence includes the declaration and testimony concerning presale representations.

▆▆▆ The trial court's findings of fact are to the following effect: (1) Sharts was the common grantor of the 60–acre and 15.044– acre tracts of property at issue; (2) Sharts made a general plan of development of land, and to effectuate such plan he filed the Declaration of Restrictive Covenants on May 22, 1978; (3) Sharts' intent in making and filing the declaration was to make the restrictions applicable to the 60–acre tract with the exception of a 2–acre tract upon which the already existing Stakeout Restaurant was located; (4) Sharts represented to defendants that the restrictions were applicable to the 60–acre tract; (5) evidence is unclear as to whether Sharts intended the 15.044–acre tract (Tract B) to be included in the general plan of development and thus subject to the restrictions; (6) as a consequence of the general development plan effectuated by the declaration, benefit accrued to the land retained by Sharts; (7) upon filing the declaration, Sharts executed deeds to the northern 30 acres of Tract A and, pursuant to the general development plan, included the declaration of restrictions in the deeds by reference; (8) defendants were induced to purchase in reliance upon the declaration and would not have bought land from Sharts absent the declaration; (9) in accordance with the general development plan, Sharts was obligated to subject any conveyance of land within the 60–acre tract to the restrictions set forth in the declaration; and (10) plaintiffs had constructive notice of the restrictions contained in the declaration by Sharts having recorded the declaration and actual knowledge of its existence and potential applicability by virtue of the title insurance policies they received that specifically excepted the title insurer from liability with respect to matters arising from the declaration.

Accordingly, the trial court concluded that the Declaration of Restrictive Covenants Running with the Land was applicable to and governed the 60–acre tract, with the exception of the 2–acre tract upon which the restaurant was located. The trial court further concluded that once Sharts put the general development plan into effect by filing the declaration and conveying out property subject to the restrictions, land retained by Sharts within Tract A

(excepting the restaurant tract) became reciprocally bound by the restrictions.

It is well established that the judgment of the trial court will not be disturbed on appeal if its findings of fact are supported by substantial evidence and are sufficient to support the judgment. *Whorton v. Mr. C's*, 101 N.M. 651, 687 P.2d 86 (1984); *see also H.J. Griffith Realty Co. v. Hobbs Houses, Inc.*, 68 N.M. 25, 357 P.2d 677 (1960). We hold the evidence of record in this case supports the trial court's findings and judgment.

It is undisputed that Sharts was the common owner and grantor of the land in question and that the conveyances of lots in Tract A–N were subject to the restrictions contained in the declaration. This supports an inference that Sharts intended to make and did make a common plan of development. Under the doctrine of implied reciprocal negative servitudes, Sharts impliedly promised to restrict some of his retained land when he conveyed the first parcel to defendant Walters. The declaration also supports the inference of such a promise, although it does not make clear how much of the retained land was bound by the promise. Thus, the dispositive issue on appeal is whether there is sufficient evidence to support a finding that the common development property included Tract A (other than the restaurant site), but not Tract B. *Cf. Hamilton v. CCM, Inc.*, 274 S.C. 152, 263 S.E.2d 378 (1980); *Edwards v. Surratt*, 228 S.C. 512, 90 S.E.2d 906 (1956) (the evidence must be clear and unmistakable).

Defendants Walters, Buchanan, and Bates testified that Sharts expressly represented, during the course of sales meetings, that Tract A was bound by the declaration. Defendant Buchanan also testified that at a closing meeting, Sharts' attorney assured him that Tract A was restricted by the covenants. Defendants testified to the effect that they purchased their lots in reliance upon these representations. Sharts also distributed "Dear Investor" letters and pre-sale agreements indicating that he intended to follow a general plan of development. The only testimony concerning the restaurant tract, which pre-dated the declaration, was that of defendant Buchanan indicating that an exception for the restaurant was understood.

The declaration itself, along with Sharts' representations, "Dear Investor" letter, pre-sale agreement, and testimony at trial all support the existence of a general development plan for Tract A (excepting the restaurant tract) and, therefore, the creation of implied covenants restricting Sharts' retained land in Tract A accordingly. *See Lehmann v. Wallace;* 20 Am. Jur.2d, *supra*, § 175; 5 R. Powell, *The Law of Real Property* ¶ 672 (P. Rohan, Rev.ed. 1987); *see also Ute Park Summer Homes Ass'n, Inc. v. Maxwell Land Grant Co.; Rowe v. May*. The evidence to this effect is clear and unmistakable. *Cf. Hamilton v. CCM, Inc.; Edwards v. Surratt.*

Accordingly, the trial court's conclusion that, with the exception of the restaurant tract, Tract A was bound by the declaration upon conveyance of lots subject to the restrictions, should be affirmed. Plaintiffs' claim that evidence to the contrary outweighed the evidence in support of the trial court's findings is irrelevant. This is not the standard of review on appeal. *See H.J. Griffith Realty Co. v. Hobbs Houses, Inc.* (findings of fact supported by substantial evidence, although in conflict with those requested by plaintiff, will not be disturbed on appeal).

Plaintiff Sharts' argument that the declaration expressly allowed him to restrict whatever property he chose is not supported by the language of the declaration or the law concerning reciprocal negative easements. Although the declaration does not clearly specify what land is to be subject to the restrictions, the language of the declaration clearly evidences the parties' intent that the restrictions would be reciprocally applicable to land retained by Sharts which he subsequently conveys. No intent to restrict only selected parcels of land at Sharts' discretion is readily apparent. Moreover, when the language in the declaration is considered in light of the circumstances surrounding the transaction and the object of the parties in making the

restrictions, it is evident that the restrictions were meant to apply to land retained by Sharts or subsequently conveyed by him out of the common development property. *See Hoover v. Waggoman*, 52 N.M. 371, 199 P.2d 991 (1948). In construing restrictive covenants, we must "give effect to the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction, and the object of the parties in making the restrictions." *Hines Corp. v. City of Albuquerque*, 95 N.M. 311, 313, 621 P.2d 1116, 1118 (1980). As noted above, there is substantial evidence that the parties intended the restrictions to apply to Tract A, with the exception of the 2–acre restaurant tract, pursuant to Sharts' general plan of development.

Although we recognize the general rule that ambiguities concerning restrictive covenants should be resolved in favor of the free enjoyment of the property and against restrictions, *Cain v. Powers*, 100 N.M. 184, 668 P.2d 300 (1983), this rule cannot be applied to defeat the obvious purpose of the restrictions. *Edwards v. Surratt*, 228 S.C. at 519, 90 S.E.2d at 909. The intent of the parties and object of the restrictions govern. *Ezer v. Fuchsloch*, 99 Cal.App.3d 849, 160 Cal.Rptr. 486, 13 A.L.R.4th 1333 (1979).

Plaintiffs' reliance on *Williams v. Waldrop*, 216 Ga. 623, 118 S.E.2d 465 (1961), is misplaced. In *Williams*, the Georgia Supreme Court specifically noted that Waldrop reserved the right to use his retained land as he chose by stating in the filed declaration that " 'the following restrictions are hereby set up and shall apply to all sales of land by Manse Waldrop *when said restrictions are specifically referred to* in deeds from Manse Waldrop to purchaser.' " *Id.* at 624, 118 S.E.2d at 467 (emphasis in original). The *Williams* court held that Waldrop's retained land was free of restrictions because of the express limitation included in the declaration and indicated that, absent such express limitation, Waldrop's retained land would have been subject to the restrictions.

The declaration in this case contains no express limitation concerning applicability of the restrictions to Sharts' retained land. Moreover, we will not read such limitation into the declaration where it results in a meaningless, illogical and strained construction of the declaration. *Cain v. Powers*, 100 N.M. at 186, 668 P.2d at 302. To read the declaration as plaintiffs suggest would render it a meaningless, deceptive and misleading document, the sole effect of which would be to entrap innocent purchasers. *See Williams v. Waldrop*, 216 Ga. at 626–627, 118 S.E.2d at 468–469 (Duckworth, C.J., dissenting). This we refuse to do. Where, as here, a general plan of development is established, we find no merit to the contention that the restrictive covenants are binding only upon the grantee at the whim of the developer.

Plaintiffs' assertion that an implied restrictive covenant is precluded because Tract A was not originally divided into lots is also erroneous. As noted above, the evidence supports the existence of a general plan of development and, therefore, the creation of implied covenants restricting Sharts' retained land. *See* 5. R. Powell, *supra*, ¶ 672; *Ute Park Summer Homes Ass'n, Inc. v. Maxwell Land Grant Co.*

■ Likewise, defendants' argument that the declaration clearly restricted all of the land owned by Sharts at the time the declaration was filed, i.e., 75 plus acres, is lacking in support. As noted above, the declaration does not clearly specify what land is to be restricted.

Defendants' claim that a country club was to be built on Tract B lacks support in the declaration itself, since covenant No. 5 provides that only single family dwellings and buildings customarily incidental thereto are permitted. Similarly, the declaration does not provide an exception for the restaurant located in the lower 30 acres of Tract A. The testimony of the witnesses varied and conflicted. Defendants Walters, Buchanan, and Bates (either owners or a spouse of an owner of land in Tract A–N) testified that Tract A was bound by the restrictions, not Tract B. Walters and Buchanan testified that the use of Tract B for a country club was conditional. A "Dear Investor" letter also indicated club privileges were guaranteed "as they

evolve[d]." Only Buchanan testified concerning the restaurant and that testimony indicated an exception for a 2–acre lot for the restaurant was understood. A letter to Sharts from Buchanan after he learned of Sharts' plans for development of Tract A–S contrary to the declaration also indicated that the restaurant was not to be bound by the declaration. All of this evidence conflicted with the testimony of Sharts and his attorney to the effect that it was intended that Sharts could restrict any of his land that he chose to restrict. In addition, this evidence conflicted with testimony of a manager for Sterling Title Company in Taos that Sharts' attorney had told her that the declaration was to bind only the northern 30 acres of Tract A.

Where evidence is in conflict, it is for the trier of fact to weigh the evidence or its credibility and resolve the conflicts. *Thompson v. Getman,* 74 N.M. 1, 389 P.2d 854 (1964). We will not substitute our judgment for that of the trial court so long as the findings are supported by substantial evidence. *Anaconda Co. v. Property Tax Dep't,* 94 N.M. 202, 608 P.2d 514 (Ct. App.1979). Accordingly, we affirm the trial court's determination that, with the exception of the restaurant tract, Tract A was bound by the declaration, but Tract B was not.

## II. *Denial of a Fair Trial*

Plaintiffs' argument is two-fold. First, they claim the trial court was biased against their case. Second, they claim the proper presentation of the cause and the ascertainment of the truth were prevented by the trial court's actions.

■ SCRA 1986, 11–611(A) provides the trial court with reasonable control over the presentation of evidence. *See State v. McCarter,* 93 N.M. 708, 604 P.2d 1242 (1980). Also, a trial court may properly intervene in the trial of a case to promote expedition and prevent unnecessary waste of time, *In re Will of Callaway,* 84 N.M. 125, 500 P.2d 410 (1972), and Rule 11–611(C) precludes the use of leading questions in most direct examinations.

We have examined the transcript for plaintiffs' examples allegedly showing trial court bias and are persuaded that the trial court acted well within its discretion in restricting counsel for Sharts. *See State v. McCarter.* Plaintiffs cite no authority that requires a trial judge in a bench trial to apply the Rules of Evidence less strictly than in a jury trial. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984).

We have also examined the portions of the transcript asserted by plaintiffs to be evidence of blatant, conflicting rulings by the trial court. In these examples, we do not find that the trial court acted inconsistently. Nor do we find plaintiffs' examples of remarks indicating the trial court believed Sharts to be a criminal or to have predetermined its decision to be supportive of this claim.

■ Although plaintiffs claim it would take pages to list every "transgression" of the trial court, it is not the duty of this court to search the record to review the evidence for possible error. *See Petty v. Williams,* 71 N.M. 338, 378 P.2d 376 (1963). Moreover, if more pages were required than allowed to fully list plaintiffs' examples, permission to exceed the allowed page length could have been sought. NMSA 1978, Civ.App.R. 9(f) (Supp.1985) (now codified SCRA, 1986, 12–213(F)).

Neither *In re Will of Callaway* nor *Egede–Nissen v. Crystal Mountain, Inc.,* 93 Wash.2d 127, 606 P.2d 1214 (1980) (En Banc), concerned a bench trial and, therefore, do not support plaintiffs' claim for reversal. Moreover, plaintiffs have failed to indicate what evidence was precluded from being shown. It was plaintiffs' duty to make an offer of proof as to that evidence. *See* SCRA 1986, 11–103(A)(2). Accordingly, plaintiffs have not demonstrated that they were deprived of a fair trial.

For the above reasons, we affirm the trial court.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.